EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Hon. Eric Colón Colón Juez Municipal Tribunal de Primera Instancia Sala Municipal de Coamo | 2017 TSPR 49 197 DPR ____ |

Número del Caso: AD-2014-5

Fecha: 31 de marzo de 2017

Abogados del Querellado:

Lcdo. Francisco Joubert Lugo

Oficina de Asuntos Legales
Oficina de Administración de los Tribunales:

Lcda. Ana Duque García
Lcda. Cristina Guerra Cáceres
Lcda. Rosa María Cruz Niemiec

Comisión de Disciplina Judicial:

Hon. Aída N. Molinary de la Cruz, Presidenta

Materia: Suspensión inmediata de tres meses de Juez Municipal por quebrantar Cánones 2, 8, 19 y 23 del Código de Ética Judicial, 4 LPRA Ap. IV-B.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re:* Hon. Eric Colón Colón Juez Municipal Tribunal de Primera Instancia Sala Municipal de Coamo | AD-2014-5 |

Opinión del Tribunal emitida por la Jueza Asociada Señora PABÓN CHARNECO

En San Juan, Puerto Rico, a 31 de marzo de 2017.

> He aquí el dilema: la aplicación correcta de la ley o la norma jurídica no es suficiente para ejercer correctamente la *función judicial.* Los estilos de trabajo, de comunicación y el comportamiento del juez en y fuera del tribunal son igualmente importantes para la imagen y el logro de la justicia. L. Rivera Román y C. López Cintrón, *El temperamento y la función judicial*, 1 Rev. Ley y Foro 4 (2009).

Hoy este Tribunal tiene la importante tarea de analizar un asunto novel en nuestro ordenamiento jurídico: las implicaciones éticas que podrían suscitarse como resultado del uso de un magistrado de las redes sociales, en particular, la red social *Facebook.* Sin duda, y conforme discutiremos, la conducta exhibida por el Hon. Eric Colón Colón (Juez Colón Colón o el querellado), a través de su perfil virtual en la referida red social, infringió los Cánones de Ética Judicial, *infra,* que le fueron imputados.

Consecuentemente, su conducta amerita que esta Curia ejerza su poder disciplinario para imponerle una sanción equivalente a la gravedad de sus actuaciones.

En ese ejercicio, es necesario hacer un balance entre la novedad que caracteriza el uso de las redes sociales -cuyas ramificaciones están comenzando a revelarse en nuestra sociedad moderna- y los deberes éticos que deben guiar a los integrantes de la judicatura tanto en el ejercicio de sus prerrogativas adjudicativas, como en sus vidas privadas. Ello enmarcado dentro de un análisis objetivo de proporcionalidad, de acuerdo con el estándar de equivalencia en la sanción que impera en nuestro ordenamiento.

Pasemos a reseñar los antecedentes fácticos que dieron origen a la Queja de epígrafe.

I

Desde el año 2010, el Juez Colón Colón se desempeña como Juez Municipal del Tribunal de Primera Instancia, Sala Municipal de Coamo. Los hechos que dieron origen al procedimiento disciplinario iniciado en su contra comenzaron con un referido de la otrora Directora de la Oficina de Administración de los Tribunales (OAT), Hon. Sonia I. Vélez Colón, quien *motu proprio* y amparada en la autoridad que le conferían las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, ordenó una investigación del perfil virtual del Juez Colón Colón en la red social

*Facebook*.[1] En esa página, el querellado mantenía un perfil en el cual, en su carácter personal, se expresaba a través de publicaciones de diversa índole con la intención de compartirlas únicamente con su círculo de amistades virtuales.

Según consta en autos y conforme a dos (2) declaraciones juradas suscritas por los señores Carlos Otero López y Raúl Manuel Colón Vázquez, Coordinador de Sistemas Confidenciales y el Administrador de la Oficina de Seguridad de los Sistemas de Información de la Rama Judicial, respectivamente, al momento de realizar la investigación ordenada por la entonces Directora Administrativa de la OAT, cualquier persona podía acceder el perfil virtual del querellado.[2] Dada esta realidad, y sin necesidad de solicitarle anuencia al Juez Colón Colón para formar parte de su círculo de amistades virtuales, los señores Otero López y Colón Vázquez lograron acceder su perfil con el fin único de recopilar y almacenar diversas fotografías y comentarios que este había publicado.

---

[1] En cuanto a este particular, las Reglas de Disciplina Judicial disponen que:

> [e]l Juez Presidente o la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora, podrá solicitar a iniciativa propia y por escrito, una investigación sobre la conducta o capacidad de un juez o una jueza. Dicha solicitud se considerará como una queja, sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla. 4 LPRA Ap. XV-B, R. 5(c).

[2] Además, en las declaraciones juradas suscritas por los señores Carlos Otero López y Raúl Manuel Colón Vázquez estos detallaron, *inter alia,* la manera en que accedieron y almacenaron la información contenida en el perfil virtual del Juez Colón Colón y señalaron que la información recopilada no fue alterada durante el proceso de almacenamiento.

Así las cosas, mediante carta fechada el 14 de marzo de 2014, la entonces Directora Administrativa refirió el asunto a la Oficina de Asuntos Legales (OAL) de la OAT para la correspondiente investigación. En su Informe, la OAL concluyó que la conducta exhibida por el Juez Colón Colón a través de las publicaciones hechas en su perfil virtual fue contraria a los Cánones 2, 8, 19 y 23 de Ética Judicial. Cán. É. Jud. P.R., 4 LPRA Ap. IV-B, C. 2, 8, 19 y 23. En consecuencia, recomendó remitir el Informe a la Comisión de Disciplina Judicial para que se determinara la existencia o no de causa probable para presentar una Querella contra el Juez Colón Colón.

Como parte de su investigación, la OAL consideró como evidencia las fotografías y comentarios que habían sido recopilados del perfil virtual del Juez Colón Colón por la Oficina de Seguridad de los Sistemas de Información de la Rama Judicial. Dada la pertinencia medular de estos para el análisis de la controversia que nos atañe, incluimos una transcripción *ad verbatim* a continuación:

> **Comentario del 1 de septiembre de 2011:** "Una señora me dice: 'No he podido pagar la renta porque a mi marido le dieron lay oss'. Y yo en mi mente: Ay chus!".

> **Comentario del 6 de septiembre de 2011:** "Que bonita esta querella que me han traido [sic]!". Junto al comentario, el Juez Colón Colón publicó dos (2) fotografías que parecen ser porciones de una querella manuscrita.

> **Comentario del 19 de septiembre de 2011:** "Esta señora me ha dicho hoy que su hijo padece de esquizofrenia, pero anenoide. Diiitoooo ...".

**Comentario del 8 de octubre de 2011:** "Sigo acordándome de cosas: Hace algún tiempo, un señor se excusó porque no pudo compadecer al tribunal. Yo le contesté que no había ningún problema, que el tribunal estaba de lo más bien, pero que gracias por preocuparse. Lolll".

**Comentario 12 de enero de 2012:** "Asi [sic] mismo como lo lee: esta persona presentó una querella porque le vendieron un carro sin batería y sin valvete".

**Comentario sin fecha de publicación:** "Entonces, la peticionaria de la orden de protección, al llenar el encasillado donde se describe el tipo de relación que sostenía con el peticionado, esto fue lo que escribió". Junto al comentario, aparece una fotografía que parece ser un formulario de orden de protección de la OAT. En el encasillado del formulario donde se indicaba "otra", la persona escribió "me endrogue [sic]".

En su Informe, la OAL consideró que los comentarios anteriormente transcritos y las diversas fotografías publicadas conjuntamente con estos estaban relacionados a las funciones judiciales del querellado. Además, como parte de su investigación, la OAL consideró otra serie de publicaciones relacionadas, *inter alia,* al consumo de bebidas alcohólicas y distintas observaciones del querellado en cuanto al desempeño de la prensa.

En virtud de lo anterior, la Presidenta de la Comisión de Disciplina Judicial, Hon. Aida N. Molinary Cruz, designó al Comisionado Asociado, Lcdo. José L. Miranda de Hostos, para que evaluara el Informe emitido por la OAL y determinara la existencia o no de causa probable para presentar una Querella contra el Juez Colón Colón. El 1 de diciembre de 2014, el licenciado Miranda de

Hostos emitió su Informe y determinó que existía causa probable para presentar una Querella contra el Juez Colón Colón por presuntamente haber infringido los Cánones 2, 8, 19 y 23 de Ética Judicial, *supra*.[3] En consecuencia, el 12 de diciembre de 2014, la OAT presentó la Querella correspondiente.

Luego de varias incidencias procesales, el 26 de enero de 2015, el Juez Colón Colón contestó la Querella presentada en su contra y solicitó su desestimación. En apoyo de su petitorio, adujo, *inter alia,* que los comentarios y las fotografías publicadas en su perfil virtual se hicieron en su carácter personal, en la intimidad de su hogar, y no en calidad de Juez. Alegó someramente que los comentarios publicados se hicieron amparados en su derecho fundamental a la libre expresión. Señaló, además, que los Cánones de Ética Judicial están huérfanos de una prohibición o directriz en cuanto al uso de las redes sociales y que no existe una reglamentación específica de la Rama Judicial en cuanto a su uso por integrantes de la Judicatura.

Posteriormente, la OAT presentó una solicitud para la tramitación sumaria del procedimiento disciplinario. Luego de varias comparecencias de las partes, la Comisión de Disciplina Judicial acogió la solicitud de la OAT y ordenó la tramitación sumaria del procedimiento. Ello por

---

[3] Es menester señalar que, en su Informe, el Comisionado Asociado, Lcdo. José L. Miranda de Hostos, no recomendó la imposición de medidas provisionales durante el trámite disciplinario, conforme provee la Regla 15 de las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B., R.15

entender que no existían hechos medulares en controversia que ameritaran la celebración de una vista evidenciaria.

Así las cosas, la Presidenta de la Comisión emitió el Informe correspondiente y concluyó que la conducta exhibida por el Juez Colón Colón vía su perfil virtual de *Facebook* era contraria a los postulados éticos recogidos en los Cánones 2, 8, 19 y 23 de Ética Judicial, *supra*. Por consiguiente, recomendó como medida disciplinaria la destitución del querellado de su cargo de Juez Municipal.

Con este marco fáctico y procesal en mente, procedemos a reseñar los preceptos éticos aplicables a la controversia de autos.

II

A

La autoridad exclusiva de este Tribunal para atender asuntos disciplinarios relacionados con los jueces y juezas de los Tribunales de menor jerarquía que componen nuestro sistema judicial es de estirpe Constitucional. *In re Acevedo Hernández,* 194 DPR 344, 359 (2015). Véase, además, *In re Robles Sanabria,* 151 DPR 488, 508-509 (2000). En cuanto a este particular, nuestra Carta Magna dispone, en lo pertinente, que los jueces y juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones "podrán ser destituidos por el Tribunal Supremo por las causas y mediante el procedimiento que se disponga por ley". Const. P.R. Art. V, Sec. 11.

Con el fin de instrumentalizar esa autoridad, "aprobamos los Cánones de Ética Judicial […], los cuales imponen ciertos deberes a los jueces con el fin de promover la confianza de los ciudadanos en nuestro sistema judicial". *In re Quiñones Artau,* 193 DPR 356, 376 (2015). Véanse, además, *In re Sierra Enríquez,* 185 DPR 830, 850 (2012); *In re Claverol Siaca,* 175 DPR 177, 188 (2009). Este cuerpo normativo recoge las reglas mínimas de conducta que deben guiar a ese grupo selecto de ciudadanos que tiene el privilegio de investirse con una toga para ejercer la loable función de impartir justicia. Preámbulo de los Cánones de Ética Judicial de 2005, 4 LPRA Ap. IV-B. Véanse, además, *In re Claverol Siaca, supra*, pág. 188; *In re Birriel Cardona,* 184 DPR 301, 306-307 (2012).

Sin duda, la regulación ética de aquellos ciudadanos que ejercen la función judicial es exponencialmente más rigurosa en comparación con otras profesiones en nuestra jurisdicción. Ello responde esencialmente a las sutilezas inherentes a la función judicial. Ante tal inescapable realidad, hemos expresado que las exigencias éticas que rigen la conducta de los miembros de la judicatura no aplican únicamente a la conducta del togado en el ejercicio de las prerrogativas de su cargo, sino que se extienden al ámbito de su vida privada. *In re Claverol Siaca, supra,* en la pág. 189; *In re González Acevedo,* 165 DPR 81, 92 (2005). La configuración de estas exigencias éticas, tanto dentro como fuera del estrado, responde a que "el respeto que la

gente le tenga a las instituciones judiciales es lo que brinda a éstas fuerza y autoridad". *In re Cancio González,* 190 DPR 290, 298 (2014).

El sitial privilegiado que ocupa un juez en nuestro ordenamiento conlleva que se impongan restricciones a su conducta que generalmente no se les exigirían a otros profesionales. Así pues, "estas limitaciones constituyen sacrificios en …[la] vida pública y privada [del Juez] que tienen el propósito de enaltecer la integridad e independencia de la Judicatura". *In re Claverol Siaca, supra,* en la pág. 188. No debemos olvidar que la función del Juez como garante de la Constitución y árbitro imparcial de la justicia le impone la constante e ineludible obligación de enaltecer los principios consustanciales a uno de los pilares de mayor envergadura en nuestra sociedad democrática: la independencia judicial.

B

El Canon 2 de Ética Judicial dispone que "[l]as juezas y los jueces ejemplificarán la independencia judicial, tanto en sus aspectos individuales como institucionales". 4 LPRA Ap. IV-B, C. 2. En esencia, este Canon establece el deber y la obligación inalienable de los integrantes del poder judicial de proteger, promover y ejemplificar la independencia de la rama constitucional a la cual sirven. *In re Aprobación Cánones Ética 2005,* 164 DPR 403, 411 (2005). Conforme surge de su historial, el referido Canon se inspiró en el concepto de independencia judicial

contenido en *Los Principios de Bangalore sobre la Conducta Judicial. Íd.* En lo atinente a este particular, los Principios de Bangalore que inspiraron este Canon de nuevo cuño disponen que "[u]n juez exhibirá y promoverá altos estándares de conducta judicial, con el fin de reforzar la confianza del público en la judicatura, que es fundamental para mantener la independencia judicial". *Principios de Bangalore sobre la conducta judicial,* O.N.U., Comisión de Derechos Humanos, 59°. Sesión, Tema 11d, E/CN.4/65 (2003). Conforme puede apreciarse, este Canon recoge el principio de independencia judicial que debe permear en las actuaciones de los integrantes de la judicatura en todo momento. Principalmente, la premisa que inspira este Canon es que la independencia judicial se legitima conforme al grado de confianza y respeto que el público le tenga a la judicatura como institución.

Por su parte, el Canon 8 de Ética Judicial regula la conducta que deben exhibir los magistrados en el desempeño de sus funciones adjudicativas[4] y les impone el deber de actuar libres de influencias externas, ya sean directas o indirectas. *In re Claverol Siaca, supra,* en las págs. 189-190. En ese sentido, deberán ser prudentes, serenos e

---

[4] Es menester señalar que aunque el Canon 8 está "bajo el acápite de *Función Judicial Adjudicativa* en los Cánones de Ética Judicial de 2005, ello no significa que la conducta que se requiere de los miembros de la Judicatura en los procesos adjudicativos no sea exigible en sus demás funciones o en su comportamiento fuera de sala". *In re Claverol Siaca,* 175 DPR 177, 196-197 (2009).

imparciales y su conducta debe excluir cualquier apariencia de susceptibilidad a influencias políticas, religiosas y públicas, o a cualquier otra motivación impropia. 4 LPRA AP. IV-B, C. 8. Un estudio del historial del referido Canon revela que su propósito es "enfatizar el principio de la independencia de criterio judicial por el cual deben regirse los miembros de la judicatura durante el desempeño de la función adjudicativa". *In re Aprobación Cánones Ética 2005, supra,* en la pág. 419. Véase, además, *In re Quiñones Artau*, *supra,* en la pág. 25. Además, pretende evitar que los jueces adjudiquen controversias cegados por la autoridad que les confiere la investidura judicial. *Íd.* Véanse, además, *In re Sierra Enríquez, supra*, en la pág. 851; *In re Cruz Aponte,* 159 DPR 170, 180 (2003).

Por otro lado, el Canon 19 de Ética Judicial, 4 LPRA Ap. IV-B, C. 19, limita de manera abarcadora las expresiones de un magistrado relacionadas a casos *sub judice.* Específicamente, el Canon 19, *supra*, dispone que "[l]as juezas y los jueces no harán declaraciones públicas sobre asuntos que estén sometidos ante su consideración, ni explicarán la razón de sus actuaciones". No obstante, esta prohibición excluye aquellas explicaciones que pueda ofrecer un miembro de la Judicatura "cuyo propósito sea orientar o ilustrar al público presente en la sala, sobre la decisión emitida o para explicar algún aspecto del procedimiento para evitar impresiones erróneas". *In re Aprobación Cánones Ética 2005, supra,* en la pág. 436.

Conforme hemos mencionado, la función de un magistrado es de envergadura tal que se les exige conducirse éticamente en todo momento, tanto en el ejercicio de las prerrogativas de sus cargos, así como en sus actividades extrajudiciales. En esencia, de lo que se trata es de exigirles a los jueces y juezas "un tipo de comportamiento, tanto dentro como fuera del tribunal, que vaya dirigido a enaltecer el cargo judicial y fomentar el respeto hacia este". *In re Quiñones Artau, supra,* en la pág. 34. Véanse, además, *In re Cruz Aponte, supra; In re Nevárez Zavala,* 123 DPR 511 (1989). De modo que, sus actuaciones fuera del estrado no levanten cuestionamientos sobre su capacidad para ejercer sus prerrogativas judiciales de manera imparcial y no deshonren el cargo judicial que ocupan. *In re Quiñones Artau, supra,* en las págs. 33-34. Véase, además, *In re Santiago Concepción,* 189 DPR 378, 403 (2013).

Este principio quedó consagrado en el Canon 23 de Ética Judicial el cual dispone que "[l]as juezas y los jueces se comportarán públicamente de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales, no deshonren el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales". 4 LPRA Ap. IV-B, C.23. El referido Canon aspira a "establecer una norma general precisa para regir el comportamiento público de las juezas y jueces en el ámbito de sus actividades fuera del estrado". *In re Aprobación Cánones Ética 2005, supra,* en la

pág. 445. En esencia, este Canon "va dirigido a pautar una norma de conducta general que responde a la alta estima y confianza pública de la que gozan los miembros de la Judicatura. Así, pues, se espera que los jueces, a través de sus acciones, no lesionen la imagen del sistema judicial". *In re Claverol Siaca, supra,* en la pág. 190.

Sin duda, la extrapolación de la regulación ética del estrado al ámbito privado y personal de un magistrado representa parte de los sacrificios que conlleva el ejercicio de la profesión judicial. Los principios democráticos básicos que un integrante de la judicatura representa y está llamado a tutelar hacen que en el contexto ético-profesional se les exija más y se les tolere menos que a otros profesionales.

III

En las últimas décadas, los foros tradicionales de comunicación que sirven de escenario para la interacción interpersonal se han extrapolado, en su gran mayoría, al mundo virtual. Las redes sociales han tenido una particular preeminencia en esta nueva plataforma de comunicación y de intercambio de información. Las ramificaciones inherentes al uso exponencial de este medio novedoso de comunicación suponen una reconstrucción de nociones tradicionales de conceptos tales como la privacidad y la libertad de expresión. Sin lugar a dudas, la extensión de las consecuencias de su uso está recién comenzando a revelarse. El ámbito ético-judicial no ha estado inmune a este

fenómeno socio-cultural que ha invadido todas las esferas de interacción interpersonal en nuestra sociedad moderna.

Dada su patente novedad y debido a que en nuestro ordenamiento no existen regulaciones específicas o pronunciamientos anteriores de este Tribunal que tracen los limítrofes entre la ética judicial y el uso de las redes sociales, es necesario auscultar, para fines ilustrativos, el trato que le han dado otras jurisdicciones a este tema en aras de arrojar luz a algunas tendencias que puedan guiarnos en la resolución de la controversia que nos ocupa.

A

Un recorrido por distintos estados de la Nación devela un sinnúmero de opiniones judiciales y consultivas en materia ético-judicial que convergen en el siguiente axioma: la participación de los jueces y juezas en las distintas redes sociales a su alcance no es una violación *per se* de los Cánones de Ética Judicial. No obstante, estos deben ser cautelosos y cerciorarse que su uso se ajuste a los preceptos éticos que rigen en la jurisdicción donde ejercen sus funciones judiciales.

En cuanto a este particular, la *American Bar Association* (ABA) ha expresado que, como normal general, "[a] judge may participate in electronic social networking, but as with all social relationships and contacts, a judge must comply with relevant provisions of the Code of Judicial conduct and avoid any contact that would undermine the judge´s independence, integrity, or impartiality, or

create an appearance of impropriety". ABA Comm. On Ethics &

Prof´l Responsibility, Formal Op. 462, *Judge´s Use of*

*Electronic Social Networking,* pág. 1 (2013).[5] A pesar de

reconocer las virtudes de las redes sociales por entender

que representan una herramienta que evita que los jueces

vivan enajenados de la sociedad, la Opinión Formal 462 de

la ABA delimita a *grosso modo* hasta qué punto su uso puede

desembocar en violaciones éticas. En ese sentido, dispone

que los magistrados que decidan participar en una red

social deben presumir el carácter público y la facilidad de

difusión de lo que publiquen en estos medios de

comunicación virtual. *Íd.* en las págs. 1-2. Además,

advierte que, aunque no se les prohíbe su participación en

las redes sociales, los jueces deben ser muy circunspectos

al utilizarlas. Ello principalmente para evitar cualquier

conducta que mancille la confianza de la ciudadanía en la

judicatura y comprometa la independencia, integridad e

imparcialidad que todo magistrado tiene el deber de

enaltecer desde que asume el cargo judicial. *Íd.*

De igual modo, se han emitido varias opiniones

consultivas de distintos comités de ética judicial a través

de la Nación que atienden los limítrofes de la ética

judicial y el uso de las redes sociales. Así, por ejemplo,

el Comité de Ética Judicial del estado de Nueva York, al

abordar este tema, ha expresado que no es inherentemente

---

[5] Disponible en:
http://www.americanbar.org/dam/aba/administrative/professional_respons
ibility/formal_opinion_462.authcheckdam.pdf

inapropiado que un magistrado participe en las redes sociales, sino que la controversia real recae sobre cómo las utiliza. N.Y. Advisory Comm. On Judicial Ethics, Op. 08-176 (2009).[6] De forma similar a la Opinión Formal de la ABA anteriormente reseñada, concluye que los jueces deben ejercer cautela al utilizar las redes sociales y que su uso debe cumplir con las reglas de conducta judicial que rigen en esa jurisdicción. *Íd.* Véase, además, *Ethics Comm. of the Ky. Judiciary*, Formal Ethics Op. JE-119, pág. 5 (2010). Además, advierte que, debido a que las redes sociales están en un estado constante de metamorfosis, es imposible predecir taxativamente todos los escenarios que podrían conllevar violaciones éticas. En ese sentido, les hace un llamado a los magistrados para que se mantengan al tanto de estos cambios y analicen cómo estos podrían impactar sus deberes éticos. *Íd.* en la pág. 3.

Por otro lado, varios comités de ética judicial coinciden en que el mero hecho de que la conducta de un magistrado se dé en un contexto virtual no altera las obligaciones éticas que, de ordinario, gobernarían la interacción interpersonal de un magistrado fuera de la esfera virtual. La médula del asunto recae no en el medio a través del cual se dé la conducta, sino en el uso y la naturaleza de la conducta exhibida en esa plataforma por el magistrado. Véanse, Cal. Judges Association Ethics Comm.,

---

[6] Disponible en:
http://www.courts.state.ny.us/ip/judicialethics/opinions/08-176.htm

Op. 66 (2010);[7] Md. Judicial Ethics Comm., Published Op. 2012-07 (2012);[8] Tenn. Judicial Ethics Advisory Comm., Op. 2010-06 (2010).[9] En cuanto a este particular, la Asociación de Jueces de California ha expresado que "[t]he same rules that govern a judge's ability to socialize and communicate in person, on paper and over the phone apply to the Internet". Cal Judges Association Ethics Comm., Op. 66, *supra,* en la pág 3. En otras palabras, no es incompatible utilizar la tecnología para hacer lo que, de otro modo, sería permisible bajo las normas éticas aplicables en la jurisdicción donde un magistrado ejerce sus funciones adjudicativas. *Íd.* en la pág. 4. En ese sentido, la Asociación de Jueces de California, puntualiza que "[i]t is the nature of the interaction that should govern the analysis, not the medium in which it takes place". *Íd.* en la pág. 11.

En fin, la discusión anterior devela un evidente consenso en cuanto a lo siguiente: la participación de un magistrado en las redes sociales es permisible siempre y cuando su uso y la naturaleza de la conducta exhibida en esa plataforma no sean contrarias a los postulados éticos que rigen en la jurisdicción en la cual ejerce sus funciones adjudicativas. De modo que el magistrado que

---

[7] Disponible en:
http://www.caljudges.org/docs/Ethics%20Opinions/Op%2066%20Final.pdf

[8] Disponible en: http://mdcourts.gov/ethics/pdfs/2012-07.pdf

[9] Disponible en:
http://www.tncourts.gov/sites/default/files/docs/advisory_opinion_12-01.pdf

decida hacer uso de las redes sociales deberá proceder con el mayor grado de circunspección, pues es imposible prever todas las ramificaciones éticas inherentes al uso de estas novedosas plataformas de comunicación.

IV

Conforme adelantamos, con su conducta, el Juez Colón Colón infringió los Cánones 2, 8, 19 y 23 del Código de Ética Judicial, *supra*. Si bien es cierto que existe un consenso en cuanto a que los jueces no están vedados de utilizar las distintas redes sociales que tienen a su alcance, el **uso** que el Juez Colón Colón le dio a este medio de expresión tuvo el efecto de infringir los deberes éticos dimanantes de los cánones previamente mencionados. La aplicación de los Cánones de Ética Judicial no se extingue por el mero hecho de que la conducta sancionada se haya efectuado a través de un medio virtual. Como vimos, lo esencial es analizar el **uso** que se le da al medio y el **contenido** de las expresiones ahí publicadas. El medio a través del cual se da la conducta no es, por sí solo, determinante.

La conducta exhibida por el Juez Colón Colón no sirvió otro propósito que no fuera socavar el respeto y la confianza de la ciudadanía en la Rama Judicial. Precisamente, es esa confianza la que nutre la independencia judicial y a su vez legitima el andamiaje en el cual se edifica la función judicial propiamente. Sus comentarios mofantes, imprudentes y carentes de

sensibilidad tuvieron el efecto inescapable de menguar la confianza de la ciudadanía en la Rama Judicial y ultrajaron la independencia judicial que todo magistrado tiene el deber de ejemplificar tanto dentro como fuera del estrado. Con sus comentarios innecesarios y burlones, el Juez Colón Colón quebrantó los postulados éticos recogidos en el Canon 2, *supra*. Además, su conducta demostró imprudencia y falta de serenidad. Al así actuar, quebrantó los principios del Canon 8 de Ética Judicial.

Por otro lado, a través de sus publicaciones, el Juez Colón Colón hizo caso omiso a la prohibición recogida en el Canon 19, *supra*. Ello al comentar públicamente, en más de una ocasión, sobre asuntos relacionados a sus funciones adjudicativas. Específicamente, publicó en su perfil virtual comentarios a través de los cuales se burló del contenido de una orden de protección y de una Querella presentada por ciudadanos que comparecieron ante él. Como si ello fuera poco, acompañó los referidos comentarios de fotografías de documentos judiciales en los cuales se pueden observar extractos de la referida Querella y orden de protección. El hecho de que, como normal general, esos documentos estén disponibles al público y que no se revelara la identidad de él o la ciudadana que compareció a su Sala no exime al Juez Colón Colón de adherirse a la prohibición contenida en el Canon 19 de Ética Judicial, *supra*.

Conforme hemos mencionado, los magistrados deben atenerse a los postulados éticos recogidos en los Cánones de Ética Judicial tanto en el desempeño de sus funciones adjudicativas como en sus vidas privadas. Examinado en conjunto, el comportamiento público exhibido por el Juez Colón Colón a través de su perfil virtual, sin duda, violentó el estándar de conducta impuesto por el Canon 23 de Ética Judicial, *supra*. Sus comentarios despiadados y bufones hacia los ciudadanos que comparecieron a su Sala en busca de un remedio en nada honran el cargo judicial que este ocupa y representan un desafío a la integridad de la Rama Judicial. Sus publicaciones, accesibles al público en general, fomentaron una cadena de reacciones que dieron pie a que otras personas también se burlaran de las causas judiciales de estos ciudadanos. La mayoría de sus comentarios estaban permeados de un tono despectivo y humillante. El querellado intentó justificar sus comentarios bajo el pretexto de que estos estaban enmarcados fundamentalmente en "correcciones gramaticales". No obstante, estos destilan falta de empatía y una enajenación total de las realidades de algunos sectores de nuestra sociedad. Esto es, sencillamente, inaceptable. La verdadera justicia no se mide en función del grado de educación que tenga un ciudadano.

Las personas que acuden a los foros judiciales lo hacen bajo el entendido básico de que el magistrado que preside una Sala atenderá su petitorio con el mismo grado

de seriedad que para ellos tiene su causa de acción, no para recibir un trato humillante. La falta de respeto exhibida por el Juez Colón Colón, reflejada en sus comentarios insensibles hacia los ciudadanos que comparecieron a su Sala, tiene el ineludible resultado de lacerar la imagen de la Rama y en nada enaltecen el cargo judicial que este tiene el privilegio de ocupar. Sin lugar a dudas, con sus comentarios, el Juez Colón Colón se apartó de aquella conducta que se espera de un magistrado en su vida privada. Esta debe ser un reflejo de la ecuanimidad, solemnidad, decoro y respeto que se le exige en sus funciones adjudicativas.

Pasemos entonces a analizar, bajo el estándar de equivalencia en la sanción que impera en nuestra jurisdicción, la sanción disciplinaria correspondiente a la gravedad de las faltas éticas cometidas por el querellado. Veamos.

V

Contrario a otras jurisdicciones, nuestro ordenamiento ético-disciplinario carece de un listado uniforme de faltas éticas con las correspondientes sanciones aplicables que nos guíe al momento de ejercer nuestra facultad disciplinaria para sancionar a un integrante de la profesión legal. Sigfrido Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado,* Estados Unidos, Pubs. J.T.S., 2010, pág. 368. Es decir, tanto en el Código de Ética Profesional como en el Código de Ética Judicial,

"las sanciones no están predeterminadas por tipos de infracción" de modo que, "no existen categorías de faltas con las correspondientes categorías de sanciones aplicables".[10] *Íd.* En ese sentido, este Tribunal goza de un amplio grado de discreción al momento de ejercer nuestras prerrogativas disciplinarias y determinar la sanción que ha de imponérsele a un integrante de la profesión legal que ha quebrantado los preceptos éticos que rigen nuestro ordenamiento disciplinario.

No obstante, en aras de brindarle coherencia y consistencia al desarrollo de los principios enunciados en estos cuerpos normativos, hemos limitado esa discreción de manera que nuestra facultad disciplinaria no se convierta en un ejercicio inconsistente y arbitrario de poder. En ese sentido, hemos expresado que al descargar nuestras funciones disciplinarias tenemos el deber de "tratar faltas parecidas de modo análogo y [así] mantener la reglamentación ético-profesional como cuerpo normativo coherente". *In re Díaz Alonso, Jr.,* 115 DPR 755, 761 (1984). Véase, además, *In re De León* Rodríguez, 190 DPR

---

[10] Es menester señalar que, a pesar de que el Código de Ética Judicial no especifica qué sanción corresponde a una violación ética, el Artículo 6.002 de la Ley Núm. 201-2003, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 LPRA sec. 25j, dispone las distintas sanciones disciplinarias a las que podrían estar sujetos los miembros de la Judicatura de incurrir en una violación ética, a saber:

    (a) Destitución de su cargo;
    (b) Suspensión de empleo y sueldo;
    (c) Limitaciones al ejercicio de la abogacía, incluyendo el desaforo;
    (d) Censura;
    (e) Amonestación; o
    (f) Cualquier otra medida remediativa.

378, 396 (2014). Después de todo, "[l]a permanencia y utilidad del sistema ético profesional depende, en buena medida, de unos patrones o guías identificables en la jurisprudencia sobre la materia". *In re Díaz Alonso, Jr., supra*, en la pág. 761.

De igual manera, *y en el contexto de un procedimiento disciplinario contra dos (2) juezas municipales*, señalamos que "[c]asos similares ameritan sanciones similares". *In re González Acevedo, supra*, en la pág. 104. *A contrario sensu*, hemos expresado que cuando nos apartemos de precedentes similares en casos que presentan controversias y situaciones de hechos análogos debemos ofrecer una explicación que justifique ese proceder. *In re Villalba Ojeda,* 193 DPR 966, 983 (2015). Pues solo de esta manera, "evitamos la arbitrariedad y logramos una reglamentación ética coherente y uniforme". *Íd*. Véase, además, *In re Rivera Nazario,* 193 DPR 573, 587 (2015).

Ahora bien, a pesar de que esa es la norma de interpretación que debe regirnos al momento de determinar la sanción correspondiente en procesos disciplinarios, en la práctica no siempre ha sido así. Lamentablemente, han sido limitadas las ocasiones en las que esta Curia se ha dado a la tarea de llevar a cabo un análisis comparativo de casos análogos con el fin de determinar la sanción disciplinaria correspondiente en un caso ético ante su consideración. Steidel Figueroa, *op.cit.,* en la pág. 369.

Véanse, además, *In re Rivera Ramos,* 178 DPR 651 (2010); *In re González Acevedo, supra.*

Sin embargo, en esta ocasión, no claudicaremos en nuestro deber de realizar un análisis íntegro y ponderado de los precedentes jurisprudenciales en aras de lograr una mayor equivalencia en la imposición de sanciones disciplinarias. Máxime, cuando se trata de un caso en el cual se recomienda imponer la sanción disciplinaria más inclemente, a saber: la destitución de un juez.

De conformidad, a continuación, llevaremos a cabo un ejercicio analítico de las distintas instancias en las cuales este Foro ha destituido a un integrante de la judicatura por haber infringido los Cánones de Ética Judicial.

### A.

En el pasado siglo, este Tribunal ha destituido jueces en menos de treinta (30) ocasiones.[11] Un análisis ponderado de la jurisprudencia emitida en materia ético-judicial devela que este alto foro ha impuesto la sanción de destitución de manera excepcional y ante conducta con un alto grado de severidad.

---

[11] Para un recuento de las decisiones en las cuales este alto Foro ha impuesto la sanción de destitución a integrantes de la Rama Judicial para los años 1992-2012, véase, *Compilación de Jurisprudencia del Tribunal Supremo de Puerto Rico Relacionada con Querellas de Ética Judicial,* Tribunal Supremo de Puerto Rico Comisión de Disciplina Judicial (2012), Volúmenes I y II. Para aquellos casos que comprenden el periodo 2013 al día presente, véase, Portal Cibernético de la Rama Judicial, http://www.ramajudicial.pr/opiniones/.

Así, este Tribunal ha destituido Jueces por, *inter alia,* cometer **asesinato en primer grado**, *In re Dávila,* 79 DPR 816 (1957); **consumir sustancias controladas**, *In re Ruiz Rivera,* 168 DPR 246 (2006), *In re Santiago Concepción, supra;* **hostigamiento sexual**, *In re Robles Sanabria, supra;* **violencia doméstica**, *In re Santiago Concepción, supra;* **sostener relaciones sexuales adúlteras en el despacho**, *In re Marín Báez,* 81 DPR 274 (1959), *In re Rodríguez Torrales,* 81 DPR 643 (1960); **agresión y conducta violenta y desordenada**, *In re Brignoni, Juez,* 84 DPR 385 (1962) (en el cual destituimos a un Juez por agredir a una mujer, luego de que esta se negara a sostener relaciones sexuales con él), *In re De Castro,* 100 DPR 184 (1971) (en el cual destituimos a un Juez por agredir a un Juez Administrador en las inmediaciones del Tribunal y amenazar con un arma de fuego cargada a un ciudadano durante un altercado), *In re Rivera Escalera,* 75 DPR 43 (1953) (en el cual destituimos a un Juez por disparar un arma en un restaurante); **consumir bebidas embriagantes durante horas laborables**, *In re Nevárez Zavala, supra;* y, **participar activamente en un esquema de adulteración de leche de vaca para consumo humano**, *In re Calzada Llanos,* 124 DPR 411 (1989).

Como puede observarse, la mayoría de la conducta anteriormente descrita es constitutiva de delito o es tan ominosa que no deja espacio para otra sanción que no sea la destitución. Por otro lado, este Foro ha destituido jueces por conducta que incide directamente sobre su imparcialidad

al adjudicar controversias o representan un abuso de poder. En ese sentido, hemos destituido jueces de sus cargos por **manipular testimonios e intimidar o interferir con testigos**, *In re Luis Acevedo,* 82 DPR 744 (1961), *In re Jackson Sanabria,* 97 DPR 1 (1969), *In re Rivera Escalera, supra*, *In re Quesada,* 82 DPR 65 (1961) (en el cual destituimos a un Juez por prometerle a un abogado de defensa ayudarlo en dos casos criminales que se verían ante él y, a esos efectos, personalmente visitó a testigos de cargo y les informó que no tenían que ir al juicio para el cual habían sido citados); **negligencia inexcusable o ineptitud manifiesta en el desempeño de sus funciones judiciales**, *In re Navarro Ortiz,* 60 DPR 485 (1942) (en el cual destituimos a un Juez, *inter alia,* por incompetencia al tramitar una declaratoria de herederos, negligencia inexcusable al resolver un habeas corpus basándose en prueba que nunca se presentó, y alterar con su puño y letra una transcripción de una minuta para conformarla maliciosamente a la sentencia dictada); **abuso de poder y de las facultades de su cargo al utilizar su título como instrumento de intimidación o presión**, *In re Rivera Escalera, supra, In re Marrero Torres,* 113 DPR 113 (1982); *In re Hernández Enríquez,* 115 DPR 472 (1984); y, por **faltar a su deber de inhibición e interferir indebidamente utilizando el prestigio y autoridad del cargo para beneficio y/o interés personal**, *In re Ramos Mercado,* 170

DPR 363 (2007), *In re Eduardo Grau Acosta,* 172 DPR 159 (2007).

Asimismo, tan reciente como el año 2015, este Tribunal tuvo la lamentable tarea de disciplinar a dos (2) jueces por incurrir en conducta constitutiva de soborno y conspiración, imparcialidad y abuso de las facultadas del cargo judicial, entre otras actuaciones adicionales que no daban margen para otro proceder que no fuera destituirlos de sus cargos judiciales. Véanse, *In re Quiñones Artau, supra; In re Acevedo Hernández, supra.* Como puede observarse, nuevamente se trataba de conducta constitutiva de delito o que constituía un abuso desmedido del poder judicial.

B.

A la luz de esta progenie, nos corresponde determinar la sanción correspondiente. Si bien es cierto que no existe un caso exactamente análogo al de autos, ello por ser la primera vez que este Tribunal analiza las implicaciones éticas del uso de las redes sociales por parte de un integrante de la Rama Judicial,[12] la discusión anterior

---

[12] Es menester destacar que, en una ocasión anterior, nos negamos a imponer una sanción disciplinaria a un Juez Superior por conducta éticamente impropia debido a que era la primera vez que nos expresábamos sobre la controversia y, por lo tanto, no existían pronunciamientos claros del Tribunal sobre la conducta que dio paso a la Querella. Véase, *In re Almodóvar Marchany,* 167 DPR 421 (2006). En aquella ocasión tuvimos que acudir a otras jurisdicciones para analizar si un juez, asignado a una Sala de Relaciones de Familia, estaba impedido, por razones éticas, de enviar una carta de recomendación al Departamento de la Familia, identificándose como juez, en papel oficial del Tribunal General de Justicia, para expresarse favorablemente sobre las cualificaciones de una compañera jueza para el licenciamiento de su hogar como hogar de crianza. Además, pesó en nuestro análisis el hecho de que el juez querellado nunca había sido sancionado en el pasado por faltas éticas.

demuestra sin ambages que en las contadas instancias en las cuales este Foro ha tenido que destituir a un integrante de la judicatura, la conducta sancionada ha sido mucho más severa en comparación con aquella exhibida por el Juez Colón Colón. No obstante, esta realidad no justifica la conducta del querellado y mucho menos representa un obstáculo a nuestra autoridad disciplinaria para sancionarlo.

Conforme vimos, han sido limitadas las instancias en las cuales este Foro ha tenido que destituir a un integrante de la judicatura de su cargo y la conducta sancionada ha sido más ominosa que aquella manifestada por el querellado. Si bien no se justifican, no nos parece que las actuaciones del Juez Colón Colón se asemejen a la conducta descrita en los casos anteriormente citados, a tal extremo que merezca una sanción equivalente a aquella impuesta por este Tribunal en esas instancias particulares. Sería incorrecto sostener objetivamente que la conducta del Juez Colón Colón es análoga a los casos anteriormente descritos, a tal extremo que sería proporcional imponerle una sanción tan severa como la destitución.

Según discutimos, para determinar la sanción que debemos imponerle al Juez Colón Colón es necesario hilvanar la casuística aplicable para equiparar, lo mejor posible, las sanciones impuestas en otras circunstancias y en contextos similares al de autos. En la mayoría de los casos en los cuales tanto abogados como Jueces han incurrido en

conducta irreverente, despectiva y poco profesional hacia aquellas personas involucradas en el proceso judicial, y que ha tenido el efecto de lacerar la imagen, el honor y la dignidad de la Rama Judicial y, por consiguiente, la confianza del Pueblo en el sistema de justicia, este Tribunal se ha limitado a censurar la conducta imputada.[13]

Así, por ejemplo, en *In re Saavedra Serrano,* 165 DPR 817 (2005), censuramos con un apercibimiento de futuras infracciones a un letrado que se condujo de manera irreverente y amenazante contra un ciudadano indigente y con una condición mental en una vista que presidió *mientras fungía como Juez Municipal*. A esos efectos expresamos que:

> **la conducta del querellado no fue serena, imparcial y respetuosa**, tal y como se exige de los jueces y de los abogados, sino todo lo contrario. El licenciado Saavedra Serrano, desde el comienzo de la vista, **actuó de forma hostil y descortés al dirigirse al querellante**, y en varias ocasiones hizo alusión a su poder y autoridad para "meter[lo] preso". Además, aun cuando el acusado querellante manifestó –en forma serena y respetuosa- ser una persona indigente y que carecía de representación legal, el querellado, de forma severa y abusiva, le advirtió que si no lo hacía "lo iba a lamentar"; le ordenó buscar representación legal sin hacer uso de su facultad para asignarle un abogado de oficio. Igualmente, el licenciado Saavedra

---

[13] En un contexto similar al de autos, la Comisión de Ética de Carolina del Norte determinó que un juez incurrió en una comunicación *ex parte* vedada por los Cánones de Ética Judicial al publicar comentarios de un caso ante su consideración en la página de *Facebook* de la representación legal de una de las partes y quien era su "amiga" en la referida red social. No obstante haber encontrado que la conducta del juez constituyó una violación ética, la Comisión impuso como sanción una censura pública. Judicial Standards Comm'n of the State of N.C., Inquiry No. 08-234 (2009), disponible en: http://www.aoc.state.nc.us/www/public/coa/jsc/publicreprimands/jsc08-234.pdf. Véase, además, *In re Slaughter,* 480 S.W.3d 842 (2015) (la comisión especial designada por el Tribunal Supremo de Texas desestimó una queja presentada contra una jueza que publicó en su página de *Facebook* comentarios relacionados a un caso que tenía ante su consideración).

Serrano, aun cuando advirtió alguna condición mental o emocional de González Salas [el querellante], **no observó sensibilidad alguna y continuó dirigiéndose a éste de forma recia y despectiva** […]

…

Resulta evidente que, **con su proceder, el licenciado Saavedra Serrano lo que hizo fue intimidar innecesariamente a un ciudadano humilde y afectado emocionalmente, lo cual denigra la profesión legal** […] (Énfasis y escolios omitidos.) (Énfasis nuestro). *In re Saavedra Serrano, supra,* en las págs. 830-831.

A su vez, en *In re Hon. Maldonado Torres,* 152 DPR 858 (2000), amonestamos y apercibimos a un Juez Superior que faltó en controlar sus emociones y le brindó un trato descortés y grosero a un abogado que acudió a su Sala. Asimismo, en *In re Rodríguez Rivera,* 170 DPR 863 (2007), suspendimos por tres (3) meses a un abogado que utilizó expresiones obscenas durante una conversación telefónica con una Secretaria en el Centro Judicial de Guayama. En aquella ocasión, expresamos que "el comentario soez, o grosero y la falta de respeto *no* tiene cabida en la administración de la justicia en nuestra jurisdicción". *Íd.* en la pág. 868. Puntualizamos, además, que "**[n]o se conduce en forma digna y honorable**, como tampoco actúa con el mayor respeto **ni exalta el honor y la dignidad** de su profesión, el abogado que así actúa y se expresa, situación que no estamos en disposición de tolerar". (Énfasis nuestro). *Íd.* Véase, además, *In re Barreto Ríos,* 157 DPR 352 (2002) (en el cual censuramos enérgicamente a un abogado por insultar a las oficiales administrativas de la Secretaría del

Tribunal de Primera Instancia, Sala de Ponce). En ese sentido, hemos expresado que "[t]odas las personas involucradas en el proceso judicial –jueces, litigantes, testigos y oficiales del tribunal– tienen un deber de cortesía con los demás participantes". Véase, *In re Barreto Ríos, supra*, en la pág. 357.

Por otro lado, en *In re Rodríguez Plaza,* 182 DPR 328 (2011), censuramos enérgicamente a la exjuez Rodríguez Plaza[14] por incurrir en conducta que "no fue digna, honorable, respetuosa, ni cordial. Fue todo lo contrario. Utilizó el poder de su cargo judicial para vejar a otros abogados". *Íd.* en la pág. 346. *Inter alia,* la exjuez le indicó a un alguacil en Sala que no podía comer unos piscolabis que esta había traído para el público, abogados y fiscales porque estaba "muy gordito". *Íd.* en la pág. 334.

Finalmente, en *In re Santiago Rodríguez,* 160 DPR 245 (2003), censuramos a una abogada por incurrir en un patrón de conducta constitutiva de discrimen por género contra víctimas de violencia doméstica, mientras esta fungía como jueza municipal. En aquella ocasión, determinamos que "las expresiones discriminatorias de la licenciada Santiago Rodríguez hacia las mujeres víctimas de violencia doméstica se apartaron de la conducta digna y honorable que exige el Canon 38 del Código de Ética Profesional, *supra.* Con su proceder minimizó y trivializó el serio problema de

---

[14] Es menester señalar que la Lcda. Wilma Rodríguez Plaza renunció a su cargo de jueza superior durante la tramitación del proceso disciplinario instado en su contra.

violencia doméstica que encara el país". *Íd.* en la pág. 255.

Como se puede apreciar, la conducta exhibida por el Juez Colón Colón es similar a aquella sancionada en los precedidos casos en el sentido de que todas representan una falta de respeto a aquellas personas involucradas en el proceso judicial. La diferencia gira en torno al foro que sirvió de escenario para el comportamiento: en lugar de exhibir la conducta impropia en el estrado, el Juez Colón Colón la extrapoló al mundo virtual. Lo que sí es análogo en todos estos casos es que tanto la conducta del Juez Colón Colón como aquella acontecida en los precitados casos tuvieron el efecto de lacerar la imagen de la Rama Judicial y minar la confianza de la ciudadanía en el sistema de justicia. Precisamente, ese fue el estándar que utilizamos para medir la conducta en los casos previamente citados y en los cuales impusimos una censura como sanción disciplinaria.

No obstante, a diferencia de los casos anteriormente discutidos, nos parece que las actuaciones del Juez Colón Colón ameritan más que una mera censura. El Juez Colón Colón publicó en su página de *Facebook* comentarios burlones y fotografías de documentos judiciales en los cuales se revelaba el contenido de distintos asuntos relacionados a sus funciones adjudicativas con el fin único de mofarse y humillar públicamente a los ciudadanos que acudieron a su Sala. Al elevar sus comentarios a la red social *Facebook*,

los comentarios antiéticos realizados por el Juez Colón Colón llegaron -o tuvieron el potencial de llegar- a un universo mucho más amplio de personas en comparación con los otros casos discutidos anteriormente. Estos comentarios y fotografías dieron paso a que otras personas comentaran y se burlaran de las personas que comparecieron a la Sala del querellado y de la burla que este hizo. Por ello, sus actuaciones ameritan más que una mera censura.

No obstante y conforme hemos discutido, la conducta del Juez Colón Colón no es semejante a aquella que en ocasiones anteriores ha acarreado la destitución como sanción. Claramente, no estamos ante una conducta con el mismo grado de severidad que aquella que protagonizó la progenie de casos de destitución anteriormente discutidos. La prudencia, así como las sanciones impuestas en situaciones parecidas al caso de autos, militan en contra de la destitución como sanción disciplinaria. Sencillamente, esa sanción no sería proporcional a la gravedad de la conducta exhibida por el querellado y tampoco se justificaría a la luz de nuestra jurisprudencia.

Si bien es cierto que debemos ser rigurosos al ejercer nuestra facultad disciplinaria, no podemos ser tan afanosos como para convertirla en un ejercicio arbitrario y desmedido de poder.

VI

Por todo lo anteriormente expuesto, concluimos que el Juez Colón Colón violó los Cánones 2, 8, 19 y 23 del Código

de Ética Judicial, *supra*. Así, decretamos su suspensión inmediata por un término de tres (3) meses. Ello es cónsono con nuestra casuística en materia ético-disciplinaria y es proporcional a las sanciones impuestas en otros contextos similares al caso de autos.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re:*<br><br>Hon. Eric Colón Colón<br>Juez Municipal<br><br>Tribunal de Primera Instancia<br>Sala Municipal de Coamo | AD-2014-5 |  |

SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2017.

Por todo lo anteriormente expuesto, concluimos que el Juez Colón Colón violó los Cánones 2, 8, 19 y 23 del Código de Ética Judicial, 4 LPRA Ap. IV-B. Así, decretamos su suspensión inmediata por un término de tres (3) meses. Ello es cónsono con nuestra casuística en materia ético-disciplinaria y es proporcional a las sanciones impuestas en otros contextos similares al caso de autos.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez está conforme y hace constar la siguiente expresión particular:

> Aunque estoy conforme con la conclusión de que el Juez Eric Colón Colón violó los Cánones 2, 8, 19 y 23 de Ética Judicial, considero que no procede meramente suspenderlo temporalmente por tres (3) meses. A mi juicio, la conducta reprochable, insensible y anti-ética, a la luz del derecho expuesto en todas las Opiniones certificadas, requiere sanciones más severas, ante el repudiable patrón de expresiones que nos ocupa. Opino que este es un caso idóneo para utilizar medidas disciplinarias adicionales a las tradicionales, según lo permite la Regla 29 de las de Disciplina Judicial. Así lo amerita la naturaleza de las actuaciones del Juez Colón Colón, por lo que además de la sanción adoptada hubiese: (1) impuesto la realización de trabajo comunitario en una organización sin fines de lucro en labores de tutoría a estudiantes

indigentes. Ello, ante su dominio del idioma español, el cual debería utilizar para contribuir a mejorar la calidad de vida de las personas humildes y no para destruir la dignidad de los seres humanos que ofendió, y (2) referido al Programa de Ayuda al Empleado para que reciba orientación y tratamiento en torno al manejo de emociones y control de conducta en su área de trabajo y en los ámbitos aplicables de la ética judicial.

La Juez Asociada señora Rodríguez Rodríguez emitió una opinión disidente, a la que se unió la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Colón Pérez emitió una opinión disidente.


                        Juan Ernesto Dávila Rivera
                        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re:*<br><br>Hon. Eric D. Colón Colón<br><br>Juez Municipal<br><br>Tribunal de Primera Instancia<br><br>Sala Municipal de Coamo | **Núm.** AD-2014-0005 |

> "Essentially, judges -like lawyers and members of the public at large- need to keep in mind that the use of emerging technologies does not relieve them of traditional ethical conventions and duties."[15]

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une la Jueza Presidenta Oronoz Rodríguez

San Juan, Puerto Rico, a 31 de marzo de 2017

Las actuaciones del Juez Colón Colón me obligan a reflexionar sobre los imperativos éticos que han de guiar a los miembros de la judicatura al emitir expresiones en las redes sociales,[16] con tal de que éstas no laceren la

---

[15] John G. Browning, *Why Can't We Be Friends? Judges' Use of Social Media*, 68 Univ. Miami L. Rev. 487, 497 (2014.

[16] El concepto "redes sociales" significa un servicio con base en la Internet que permite a los individuos: (1) construir un perfil público o semi-público; (2) articular una lista de otros usuarios con quienes compartir una conexión; y (3) ver y navegar por su lista de conexiones y aquellas hechas por otros dentro del sistema. James Grimmelmann, *Saving Facebook*, 94 Iowa L. Rev. 1137, 1142 (2009) (citando a Danah M. Boyd & Nicole B. Ellison, *Social*

dignidad del cargo que ostentan ni maculen la legitimidad de la rama de gobierno en la que sirven.

Al abordar esta difícil tarea, partimos de la premisa de que "[e]l Juez, en su dedicación profesional, no es hombre con demasiadas opciones a su alcance; su sendero de perseverante rectitud no admite ni sinuosidades ni desvíos". Francisco Soto Nieto, *Compromiso de Justicia* 30 (1997). Al considerar asuntos éticos de los miembros de la judicatura, nuestra mayor preocupación es salvaguardar los principios básicos de la actuación judicial.

En consideración a lo anterior, estimo que la conducta desplegada por el Hon. Eric D. Colón Colón constituyó un atentado contra la médula del quehacer judicial, por lo que discrepo de la sanción avalada por una mayoría de este Tribunal. Considero que el Juez Colón Colón debió ser destituido inmediatamente, pues ha demostrado no ser digno del cargo que ocupa. Por ello, disiento.

**I**

El Hon. Eric D. Colón Colón ("el querellado") funge como Juez Municipal del Tribunal de Primera Instancia, Sala Municipal de Coamo, desde el 2 de julio de 2010. Éste, bajo el nombre de "Eric Colón Colón", mantiene un perfil virtual en la red social *Facebook*, en el cual publicaba comentarios y fotografías de diversa índole, con

---

*Network Sites: Definition, History, and Scholarship*, 13 J. Computer-Mediated Comm. 11 (2007)).

tal de compartirlas con su círculo de "amistades" virtuales. Ello, en su carácter personal y no en calidad de miembro de la judicatura. Sin embargo, dicho perfil virtual, al momento de llevarse a cabo la investigación que culminó en el procedimiento disciplinario que nos ocupa, era público.[17] Es decir, cualquier persona podía acceder al mismo y leer u observar los comentarios o fotografías que el Juez Colón Colón publicaba.[18]

Así las cosas, y en atención a las directrices que diera la entonces Directora Administrativa de la Oficina de Administración de los Tribunales (OAT), Hon. Sonia

---

[17] La investigación relacionada con la publicación de fotografías y comentarios por el Juez Colón Colón fue instada por la entonces Directora Administrativa de la Oficina de Administración de los Tribunales (OAT), Hon. Sonia Ivette Vélez Colón, al amparo de la autoridad que para ello le confieren las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B R. 5(c) ("El Juez Presidente o la Jueza Presidenta, un Juez Asociado o una Jueza Asociada, el Director o la Directora, podrá solicitar a iniciativa propia y por escrito, una investigación sobre la conducta o capacidad de un juez o una jueza. Dicha solicitud se considerará como una queja, sin que sea necesario cumplir con los requisitos formales del inciso (b) de esta regla".)

[18] Es menester señalar que la publicidad del perfil virtual del Juez Colón Colón quedó probada, a satisfacción del Tribunal, mediante las declaraciones juradas suscritas por los señores Carlos Otero López y Raúl Manuel Colón Vázquez, Coordinador de Sistemas Confidenciales y Administrador de la Oficina de Seguridad de los Sistemas de Información de la Rama Judicial, respectivamente. En cuanto a la declaración suscrita por el señor Otero López, en ésta se detalló la manera en que se obtuvieron y almacenaron las distintas publicaciones hechas por el Juez Colón Colón en su perfil virtual. Asimismo, se señaló que dichas publicaciones no fueron alteradas durante el transcurso de la investigación inicial. De otra parte, la declaración jurada suscrita por el señor Colón Vázquez señaló que éste, una vez recibió la información recopilada por el señor Otero López, procedió a remitir la misma a la Oficina de Asuntos Legales de la OAT, para que ésta le diera curso a la investigación que correspondiera.

Ivette Vélez Colón, la Oficina de Seguridad de los Sistemas de Información de la Rama Judicial refirió el asunto a la Oficina de Asuntos Legales de la OAT. Ésta, luego de haber realizado las investigaciones de rigor, emitió un *Informe de investigación*, el cual fue referido por la entonces Directora Administrativa de la OAT a la Comisión de Disciplina Judicial ("la Comisión") de este Tribunal. En dicho informe, se alude a una serie de fotografías y comentarios publicados por el querellado, cuyo contenido presuntamente contraviene varios cánones de ética judicial. Entre éstos, cabe destacar una serie de comentarios relacionados con asuntos ante la consideración del Juez en el descargo de sus labores judiciales. Dada la importancia medular que éstos revisten para la disposición del procedimiento disciplinario que atendemos, conviene repasarlos:

> Comentario del 1 de septiembre de 2011: "Una señora me dice: 'No he podido pagar la renta porque a mi marido le dieron lay oss'. Y yo en mi mente: Ay chus!".

> Comentario del 6 de septiembre de 2011: "Que bonita esta querella que me han traido [sic]!". Conjuntamente con este comentario, el Juez Colón Colón publicó dos fotografías en las que se pueden observar porciones de una querella manuscrita presentada ante el Tribunal de Primera Instancia.

> Comentario del 19 de septiembre de 2011: "Esta señora me ha dicho hoy que su hijo padece de esquizofrenia, pero anenoide. Diiitoooo . . .". En respuesta a varios comentarios, el Juez Colón Colón replicó: "Quiso decir paranoide, supongo" y "Hay otra cosa, que son las aDenoides [sic] que tienen q ver con las amígdalas [sic] . . . lol".

Comentario del 8 de octubre de 2011: "Sigo acordándome de cosas: Hace algún tiempo, un señor se excusó porque no pudo compadecer al tribunal. Yo le contesté que no había ningún problema, que el tribunal estaba de lo más bien, pero que gracias por preocuparse. Lolll".

Comentario del 12 de enero de 2012: "Asi [sic] mismo como lo lee: esta persona presentó una querella porque le vendieron un carro sin batería y sin valvete". En otro comentario relacionado con dicha querella, el Juez Colón Colón señaló: "A lo mejor tenía la vonga . . .".

Comentario no fechado, el cual aparece publicado conjuntamente con una fotografía en la cual se puede observar parte de un formulario de orden de protección de la OAT: "Entonces, la peticionaria de la orden de protección, al llenar el encasillado donde se describe el tipo de relación que sostenía con el peticionado, esto fue lo que escribió". En el encasillado del formulario donde se indicaba "otra", la persona escribió "me endroge [sic]".

Además de los comentarios transcritos, **los cuales atañen a las labores judiciales del querellado y asuntos ante la consideración de éste**, en su perfil virtual se publicaron una serie de comentarios relacionados con el desempeño de la prensa, la política y otros con alta connotación sexual. A modo de ejemplo, cabe mencionar los siguientes:

Comentario del 8 de septiembre de 2011: "La prensa cuestionando una fianza fijada por un juez. A cuenta de qué? Con qué conocimiento? Seguramente no sabe ni lo que es una fianza en un caso criminal. Qué se creen?".

Comentario del 18 de septiembre de 2011: "Me pregunto: ¿Por qué la prensa les llama 'anexionistas' a las personas que quieren que PR sea un estado de EEUU, y no les llama 'colonialistas' a las que quieren mantener el estatus político actual? Qué cosas, no?".

Comentario del 20 de septiembre de 2011: "Alguien le puede explicar a la Prensa que no se dice o se escribe 'no a lugar'? Lo correcto es 'no Ha lugar', del verbo Haber. Significa que no Hay lugar o no tiene lugar la moción, petición, etc. Lo otro sería un soberano disparate. Como siempre, a la orden".

Comentario del 11 enero de 2012: Otra joya del dominio del lenguaje que tiene la Prensa de este territorio no incorporado: 'La fama de W. Mercado trasciende más allá de la Astrología'. Si trasciende, tiene que ser más allá. Y muchos se consideran comunicadores . . . Redundantes! Disparater@s!".

Comentario del 18 de enero de 2012: "Y ese titular que escuché: 'Suiza derrama leche en quebrada de Puerto Nuevo'? Qué cosa más sugestiva!!!"

Comentario del 31 de enero de 2012: "Mis adorados perros del tribunal, jugando . . . Btw, la blanca y la negra son perras . . .". Conjuntamente con el comentario, el Juez Colón Colón publicó una fotografía en la que aparecen tres perros en una posición que sugiere que éstos estaban copulando.

Comentario del 20 de octubre de 2012: "Listo para votar en mi casita! Y éstas NO son papeletas modelo". Conjuntamente con este comentario, el Juez Colón Colón publicó una fotografía en la que se pueden observar varias papeletas electorales.[19]

---

[19] Además de lo anterior, el Juez Colón Colón realizó las siguientes expresiones referentes a la ingesta de bebidas alcohólicas:

Comentario del 21 de agosto de 2011: "Bueno, creo que ya tengo todo lo que me hacía falta para Irene". Conjuntamente con el comentario, se publicó una foto en la que se pueden observar dos botellas de Dewar's White Label, una marca de whiskey comercial.

Comentario del 21 de agosto de 2011: "Gente, dense prisa, que dentro de una hora el gobernador anunciará si decreta la ley seca. A correr se ha dichooooooo!!!".

En vista de lo anterior, el informe suscrito por la Oficina de Asuntos Legales de la OAT razonó que el Juez Colón Colón contravino los cánones 2, 8, 19 y 23 de ética judicial. Cán. É. Jud. P.R., 4 L.P.R.A. Ap. IV-B, C. 2, 8, 19 y 23.

Así las cosas, atendido el informe en cuestión por la Comisión de Disciplina Judicial, ésta designó al Lcdo. José L. Miranda de Hostos para que evaluara el mismo, conjuntamente con sus anejos, y determinara la existencia o no de causa probable para presentar una querella contra el Juez Colón Colón. El 1 de diciembre de 2014, el licenciado Miranda de Hostos rindió su informe, en el que concluyó que, en efecto, existía causa probable para presentar una querella contra el Juez Colón Colón por presunta violación a los cánones 2, 8, 19 y 23 de ética judicial. Por tanto, el 12 de diciembre de 2014, la OAT presentó la querella correspondiente, en la cual formuló lo siguientes cargos:

### Primer Cargo

> El Querellado lesionó la imagen de la Rama Judicial y socavó la integridad, el respeto y la confianza que debe tener el pueblo en la Judicatura, deshonrando el cargo judicial, al colocar comentarios, anuncios y mensajes en su página de *Facebook* burlándose de ciudadanos y ciudadanas que habían comparecido ante él y haciendo referencia a asuntos que estaban o estuvieron ante su consideración, incluyendo o colocando en dicha página de *Facebook* copia de partes o porciones de documentos judiciales, además de mostrar imprudencia y falta de sensibilidad.

---

Comentario del 6 de enero de 2012: "Con el permiso de tod@s, voy a prepararme un trago".

Al así hacerlo, el Querellado infringió los Cánones 2, 8, 19 y 23 de Ética Judicial.

### Segundo Cargo

El Querellado lesionó la imagen de la Rama Judicial y socavó la integridad, el respeto y la confianza que debe tener el pueblo en la Judicatura, al colocar comentarios, anuncios y mensajes en su página de *Facebook* relacionados o haciendo referencia a bebidas alcohólicas, críticas a la prensa y al modo de la redacción de noticias, burlas de la manera de expresarse de ciudadanos que habían comparecido ante él, alusión a animales en posiciones de copulación y referencias políticas. Al así hacerlo, el Querellado infringió los Cánones 2, 8, 19 y 23 de Ética Judicial.

### Tercer Cargo

El Querellado no observó su deber de comportarse de acuerdo a las más altas normas de respeto, decoro, solemnidad y dignidad requeridas a los miembros de la Judicatura en su página de *Facebook*, violentando su deber y responsabilidad de exhibir un comportamiento ejemplar en todo momento, tanto en su vida profesional, como en su vida privada. De esta forma, infringió los Cánones 2, 8, [1]9 y 23 de Ética Judicial.

Luego de varias prórrogas, el 12 de diciembre de 2014, el Juez Colón Colón presentó su contestación a la querella, en la que adujo varias defensas y solicitó la desestimación de ésta. Entre otros particulares, sostuvo que los comentarios publicados en *Facebook* fueron hechos en su carácter personal; además, invocó, sin más, su derecho fundamental a la libertad de expresión.[20] Por otra

---

[20]Nótese que este planteamiento hecho por el querellado, invocando su derecho a la libre expresión, no fue discutido cabalmente por éste en su comparecencia. Sin embargo, ante la disyuntiva de cuáles son los límites permisibles que han de supeditar el derecho a la libre expresión de los jueces, en tanto funcionarios

parte, señaló que procedía desestimar la querella dado que

los Cánones de Ética Judicial nada disponen sobre el uso

de las redes sociales. Asimismo, indicó que nunca se le

ofrecieron talleres o adiestramientos sobre el uso de

redes sociales.[21]

---

judiciales, y con independencia del medio del que se trate, es menester recordar que:

> [a]l asumir el cargo [de juez], ést[os] acepta[n] también ciertas restricciones a su conducta, tanto en ejercicio de sus funciones propiamente judiciales como en sus demás actividades, ya sean personales o profesionales. *Estas limitaciones, si bien no les privan de los derechos que poseen como miembros de nuestra sociedad, representan sacrificios en su vida pública y privada que enaltecen la integridad de independencia de su ministerio y estimulan el respeto y la confianza en la Judicatura.*
>
> *In re Hernández Torres*, 167 D.P.R. en las págs. 839-840.

Por tanto, no debe sorprender a nadie que la labor judicial implique necesariamente la renuncia a ciertas libertades, *"en especial, en el ámbito de la libertad de expresión y asociación"*. *Id*. en la pág. 840. Máxime en un ordenamiento como el nuestro, que, en aras de robustecer y afianzar la legitimidad de la Rama Judicial, incluso contempla algunas limitaciones constitucionales a las actividades expresivas de los jueces. Véase Const. P.R. Art. V, Sec. 12 ("Ningún juez aportará dinero, en forma directa o indirecta, a organizaciones o partidos políticos, ni desempeñará cargos en la dirección de los mismos o participará en campañas políticas de clase alguna, ni podrá postularse para un cargo público electivo a menos que haya renunciado al de juez por lo menos seis meses antes de su nominación".). Asimismo, debe tenerse presente que las limitaciones que suponen los cánones discutidos en esta opinión son patentemente razonables, toda vez que pretenden, ante todo, vindicar un interés apremiante del Estado: velar por la integridad, independencia e imparcialidad de la Rama Judicial.

[21] En su contestación a la querella, el Juez Colón Colón cuestionó la admisibilidad de la evidencia recopilada en su contra. Para ello, invocó lo resuelto por el Tribunal Federal de Distrito para el Distrito de Maryland en *Lorraine v. Marketl American Ins. Co.*, 241 F.R.D. 534 (D.

Luego de varios trámites, la Comisión de Disciplina Judicial acogió una solicitud de la OAT y dispuso para la tramitación sumaria del procedimiento ante sí, por entender que no existía controversia de hechos medulares. En consecuencia, el 22 de enero de 2016, la Hon. Aida N. Molinary de la Cruz, presidenta de la Comisión, emitió el informe correspondiente.[22] En éste, razonó que los comentarios y las fotografías publicadas por el Juez Colón Colón en su perfil virtual en la red social *Facebook* contravinieron los cánones 2, 8, 19 y 23 de ética judicial. Así, recomendó, como medida disciplinaria, su destitución del cargo de Juez Municipal.

**II[23]**

**A**

---

Maryland 2007). En cuanto a este particular, baste con señalar que, dadas las admisiones hechas por el propio querellado en su contestación, el argumento carece de méritos.

[22]Las determinaciones de hecho formuladas por la Comisión de Disciplina Judicial, en su informe, son virtualmente idénticas a aquéllas formuladas por la Oficina de Asuntos Legales de la OAT, según éstas constaban en su *Informe de investigación*. Recuérdese, pues, que "[e]s norma firmemente establecida que este Tribunal no alterará las determinaciones de hecho de la Comisión [de Disciplina Judicial] en ausencia de parcialidad, prejuicio o error manifiesto". *In re Santiago Concepción*, 189 D.P.R. 378, 409 (2013) (citando a *In re Claverol Siaca*, 175 D.P.R. 177, 192 (2009); *In re Scherrer Caillet-Bois*, 162 D.P.R. 842, 862 (2003)). Véase, además, *In re Hon. Maldonado Torres*, 152 D.P.R. 858, 869 (2000); *In re Moreira Avillán*, 147 D.P.R. 78, 86 (1998).

[23] Aprovecho para consignar mi satisfacción al percatarme que la mayoría de este Tribunal acogió, prácticamente en su totalidad, los fundamentos, referencias y razonamientos jurídicos expuestos en el Borrador de Opinión que circulé inicialmente para atender el caso de referencia.

La autoridad de este Tribunal para atender procesos disciplinarios relacionados con los jueces de nuestro sistema judicial es de rango constitucional. Véase Const. P.R. Art. V, Sec. 11. Véase, además, *In re Robles Sanabria*, 151 D.P.R. 483, 508-509 (2000). Así, "[p]ara llevar a cabo esa función aprobamos los Cánones de Ética Judicial, los cuales imponen ciertos deberes a los jueces con el fin de promover la confianza de los ciudadanos en nuestro sistema judicial". *In re Quiñones Artau*, 2015 T.S.P.R. 84, en la pág. 11, 193 D.P.R. __ (2015). Véase, también, *In re Sierra Enriquez*, 185 D.P.R. 830, 850 (2012); *In re Claverol Siaca*, 175 D.P.R. 177, 188 (2009). Por tanto, "las limitaciones [y deberes] que los Cánones de Ética Judicial imponen a la conducta de los jueces *son consustanciales con el poder que tiene este Tribunal de reglamentarla*". *In re Hernández Torres*, 167 D.P.R. 823, 839 (2006).

Asimismo, la regulación ética de la función judicial responde, en gran medida, a la importancia trascendental que ocupa el Juez en nuestro ordenamiento, en tanto árbitro imparcial de la Constitución y vindicador de los derechos reconocidos en ésta. No se debe olvidar, por tanto, que:

> el comportamiento de los miembros de la Judicatura constituye uno de los pilares en los que se cimienta el Sistema Judicial. Por ello, se exige una conducta intachable para que éstos sirvan de ejemplo y fomenten el respeto y la confianza del pueblo en el Sistema Judicial. De esta forma se preserva "[l]a independencia judicial, la

> administración efectiva e imparcial de la
> justicia y *la confianza de la ciudadanía* en
> un sistema de justicia", lo que contribuye a
> afianzar y a consolidar las bases
> democráticas de nuestra sociedad.
>
> *In re Cancio González*, 190 D.P.R. 290,297-298
> (2014). Véase, además, *In re Quiñones Artau*,
> 2015 T.S.P.R. 84, en la pág. 11; *In re Hon.
> Maldonado Torres*, 152 D.P.R. 850, 867 (2000).

Esa *confianza* que deposita la ciudadanía en la figura del Juez es verdaderamente fundamental, puesto que "el respeto que la gente le tenga a las instituciones judiciales es lo que brinda a éstas fuerza y autoridad". *In re Cancio González*, 190 D.P.R. en la pág. 298. Véase *Lozada Sánchez et al. v. J.C.A.*, 184 D.P.R. 898, 990 (2012).

En consideración de lo anterior, los Cánones de Ética Judicial establecen las normas mínimas que deben cumplir los jueces en nuestro ordenamiento. *In re Birriel Cardona*, 184 D.P.R. 301, 306 (2012). Los cánones propenden, así, a afianzar la confianza de la ciudadanía en su sistema de justicia. Estas "normas mínimas", valga señalarlo, son enunciados éticos de carácter general, formulados en términos amplios, los cuales el juez está obligado a estudiar y aplicar con rigurosidad, según las circunstancias particulares a las que se enfrente. Véase *In re Birriel Cardon*, 184 D.P.R. en las págs. 306-307 (2012).

De otra parte, estas normas éticas han de aplicar en el descargo de las funciones judiciales así como también en la vida privada del Juez. *In re González Acevedo*, 165 D.P.R. 81, 93 (2005). Esto es, "estas limitaciones

constituyen sacrificios en . . . [la] vida pública y privada [del Juez] que tienen el propósito de enaltecer la integridad e independencia de la Judicatura". *In re Claverol Siaca*, 175 D.P.R. en la pág. 188.

**B**

En lo pertinente a este caso, el canon 2 dispone que "[l]as juezas y los jueces ejemplificarán la independencia judicial, tanto en sus aspectos individuales como institucionales". 4 L.P.R.A. Ap. IV-B, C. 2. Este canon, pues, "establece la obligación de ejemplificar la independencia judicial". *In re Aprobación Cánones de Ética Judicial de 2005*, 164 D.P.R. 403, 411 (2005). Tal ejemplificación, a su vez, incide en la confianza que el pueblo deposita en la judicatura –presupuesto indispensable para la función judicial y justificación esencial de la regulación ética de ésta–. Por tanto, los jueces están obligados a "exhibir[] y promover[] altos estándares de conducta judicial, con el fin de reforzar la confianza del público en la judicatura, que es fundamental para la independencia judicial". *Principios de Bangalore sobre la conducta judicial*, O.N.U., Comisión de Derechos Humanos, 59°. Sesión, Tema 11d, E/CN.4/65 (2003).[24]

---

[24]Nótese que nuestro canon 2 de ética judicial "proviene del concepto de independencia judicial comprendido en *Los Principios de Bangalore sobre la Conducta Judicial . . .*". *In re Aprobación Cánones de Ética Judicial de 2005*, 164 D.P.R. 403, 411 (2005). Véase, también, Oficina de las Naciones Unidas contra la Droga y el Delito, *Comentario relativo a los Principios de Bangalore sobre la conducta judicial* 47 (2013), disponible en https://www.unodc.org/documents/corruption/Publications/202

Dado el carácter expansivo y abarcador de nuestros cánones de ética judicial, estos altos estándares de conducta judicial son de aplicación no sólo en las labores propiamente judiciales que realiza el Juez, sino que, también, han de configurarse en exigencia ética en sus actuaciones fuera del estrado. Después de todo, el deber de conducta impuesto por el canon 2 es un deber general que ha de guiar las actuaciones de los jueces en todo momento.

## C

### i

El canon 8 de ética judicial regula primordialmente la conducta de la judicatura en su quehacer adjudicativo. Así, este canon dispone que

> [p]ara el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, prudentes, serenos e imparciales. . . .
>
> La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias.
>
> 4 L.P.R.A. Ap. IV-B, C. 8.

En términos generales, la norma que contiene este canon "pretende evitar que los jueces tomen decisiones 'ensoberbecidos por el poder'". *In re Quiñones Artau*, 2015

---

0/V1138012-SPAN_eBook.pdf ("[E]l juez debe demostrar y promover un elevado estándar de conducta judicial como un elemento que garantiza la independencia de la judicatura".).

T.S.P.R. 84, en la pág. 12; véase, además, *In re Cruz Aponte*, 159 D.P.R. 170, 180 (2003).

Asimismo, este canon exige que los jueces excluyan cualquier apariencia de susceptibilidad a influencias o motivaciones impropias. *In re Claverol Siaca*, 175 D.P.R. en la pág. 190. En cuanto a este aspecto, tal apariencia no sólo se manifiesta en el descargo de la función adjudicativa, sino que, además, comprende las actuaciones y expresiones del Juez en su vida privada, las cuales indefectiblemente pudieran arrojar dudas sobre su integridad ética y moral. Por ejemplo, el uso impropio del lenguaje y comentarios sobre casos *sub judice* son conductas reprochables, y sancionables, bajo este canon. Véase *In re Aprobación Cánones de Ética Judicial*, 164 D.P.R. en la pág. 419.

De hecho, en lo que respecta a los comentarios sobre casos *sub judice*, el canon 19 de ética judicial, de manera tanto más específica, dispone que "[l]as juezas y los jueces no harán declaraciones públicas sobre asuntos que estén sometido *ante su consideración*, ni explicarán la razón de sus las actuaciones". 4 L.P.R.A. Ap. IV-B (énfasis suplido). Nótese, en primer lugar, que a diferencia del canon 8 –el cual, como hemos visto, prohíbe comentarios sobre casos *sub judice*, en general-, el canon 19 remite a los casos que determinado juez tenga ante su consideración. Es decir, este canon concretiza, en cierto modo, el deber general que dimana del canon 8, puesto que

ambos preceptos éticos, a la postre, procuran lo mismo:
velar por la integridad y pulcritud de las labores
adjudicativas de los miembros de la judicatura del País.
De otra parte, es preciso notar que el canon 19 proscribe
todas aquellas declaraciones *públicas* sobre asuntos que
estén sometidos ante la consideración del juez que las
emite. Es decir, lo esencial es el contenido de las
declaraciones o expresiones –esto es, que versen sobre
asuntos ante la consideración del Juez que las emite- y
que éstas sean públicas. El medio a través del cual éstas
se publiquen es, de ordinario, irrelevante.[25]

---

[25] Ello no significa, empero, que en algunos casos los
medios de publicación o comunicación puedan ser éticamente
relevantes. Por ejemplo, en otras jurisdicciones la red
social *Facebook* ha suscitado diversas controversias éticas
relacionadas al uso de mecanismos inherentes al
funcionamiento de dicha plataforma virtual, los cuales bien
pudieran no ser considerados "expresiones" o
"declaraciones" en el sentido tradicional del término, pero
sí pudieran constituir conducta éticamente cuestionable.
Véase, por ejemplo, Fla. Judicial Ethics Advisory Comm.,
Op. 2009-20 (2009), disponible en:
http://www.jud6.org/legalcommunity/legalpractice/opinions/j
eacopinions/2009/2009-20.html ("The Committee believes that
listing lawyers who may appear before the judge as
'friends' on a judge's social networking page reasonably
conveys to others the impression that these lawyer
'friends' are in a special position to influence the
judge."); Ethics Comm. of the Ky. Judiciary, Formal Ethics
Op. JE-119 (2010), disponible en:
http://courts.ky.gov/commissionscommittees/JEC/JEC_Opinions
/JE_119.pdf ("While social networking sites may create a
more public means of indicating a connection, the
Committee's view is that the designation of a 'friend' on a
social networking site does not, in and of itself, indicate
the degree or intensity of a judge's relationship with the
person who is the 'friend'"."); Mass. Comm. On Judicial
Ethics, Op. No. 2011-6 (2011), disponible en:
http://www.mass.gov/courts/case-legal-res/ethics-
opinions/judicial-ethics-opinions/cje-opin-2011-6.html ("A
judge's 'friending' attorneys on social networking sites
creates the impression that those attorneys are in a

Es menester señalar que aunque los cánones 8 y 19 "aparecen bajo el acápite de *Función Judicial Adjudicativa* en los Cánones de Ética Judicial de 2005, ello no significa que la conducta que se requiere de los miembros de la Judicatura en los procesos adjudicativos no sea exigible en sus demás funciones o en su comportamiento fuera de sala". *In re Claverol Siaca*, 175 D.P.R. en las págs. 196-197. Recuérdese, pues, que los acápites de los Cánones de Ética Judicial no son "camisas de fuerza" que impidan su interpretación, y subsiguiente aplicación, más allá de su clasificación interna. *Id.* en la pag. 197. Véase, además, *In re Cruz Aponte*, 159 D.P.R. en la pág. 187 n. 7.

**D**

Por último, es necesario evaluar el canon 23 de ética judicial, el cual consagra el deber general ético que ha de guiar a los jueces en sus actividades extrajudiciales. Éste, dispone que "[l]as juezas y los jueces se comportarán públicamente de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales, no deshonren

---

special position to influence the judge."); N.Y Advisory Comm. On Judicial Ethics, Op. 13-39 (2013), disponible en: http://www.nycourts.gov/ip/judicialethics/opinions/13-39.htm ("The Committee believes that the mere status of being a 'Facebook friend,' without more, is an insufficient basis to require recusal."); *Domville v. State*, 103 So. 3d 184 (Fla. Dist. Ct. App. 2012) ("We find . . . that the Florida Code of Judicial Conduct precludes a judge from both adding lawyers who appear before the judge as "friends" on a social networking site and allowing such lawyers to add the judge as their 'friend.'")(citas omitidas).

el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales". 4 L.P.R.A. Ap. IV-B, C. 23.

Este canon, de nuevo cuño, pretende "establecer una norma general precisa para regir el comportamiento público de las juezas y los jueces en el ámbito de sus actividades fuera del estrado". *In re Aprobación Cánones de Ética Judicial de 2005*, 164 D.P.R. en la pág. 445. Véase, además, *In re Quiñones Artau*, 2015 T.S.P.R. 84, en la pág. 16 ("Este canon se refiere a la conducta que deben observar los jueces en el contexto extrajudicial".); *In re Claverol Siaca*, 175 D.P.R. en la pág. 190 ("Este canon va dirigido a pautar una norma de conducta general que responde a la alta estima y confianza pública que gozan los miembros de la Judicatura".). De esta forma, este canon busca regular expresamente la conducta de los magistrados fuera del estrado. Ello, claro está, conjuntamente con los cánones discutidos, los cuales, como hemos visto, se proyectan fuera del ámbito propiamente judicial.

De lo que se trata, pues, es de exigirles a los jueces de nuestro sistema judicial "un tipo de comportamiento, tanto dentro como fuera del tribunal, que vaya dirigido a enaltecer el cargo judicial y fomentar el respeto hacia este". *In re Quiñones Artau*, 2015 T.S.P.R. 84, en la pág. 16. Es decir, se trata de exigirles que "sus actuaciones no deshonren el cargo judicial que ocupan ni interfieran con el desempeño de sus funciones". *Id.*

Véase, también, *In re Santiago Concepción*, 189 D.P.R. en la pág. 403; *In re Claverol Siaca*, 175 D.P.R. en la pág. 190.

### III

En las últimas décadas, el desarrollo vertiginoso de las redes sociales ha supuesto, entre otros efectos, la reconfiguración de lo público y lo privado, sobre todo, en lo que atañe a la comunicación y el manejo de la información. Asimismo, las redes sociales han irrumpido en la vida cotidiana, transformado sustancialmente la interacción interpersonal entre los distintos sectores de la sociedad. Los jueces, en tanto miembros de ésta, no están al margen de tales desarrollos. Les compete, pues, atemperar su conducta a este nuevo medio de comunicación, el cual a pesar de su patente novedad no justifica desatender las pautas éticas que regulan la función judicial.

**A**

Dado el acelerado desarrollo de las redes sociales, la American Bar Association (ABA), así como múltiples jurisdicciones de Estados Unidos han emitido opiniones consultivas y decisiones judiciales que atienden las intersecciones emergentes entre la ética judicial y las redes sociales.[26] Conviene hacer un breve recorrido por tales jurisdicciones y reseñar el tratamiento que éstas han dado al asunto en cuestión.

La Opinión Formal 462 de la ABA, titulada *Judge's Use of Electronic Social Networking* (Opinión de la ABA), aborda las limitaciones que la ética judicial le impone a un juez cuando utiliza las redes sociales. ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 462 (2013).[27] En ésta, aunque se reconoce el valor social de las redes sociales, se advierte que los miembros de la judicatura deben ser muy cautelosos al utilizarlas. *Id.* en la pág. 2. Lo anterior, sobre todo, porque los jueces, al asumir su cargo, asumen también la responsabilidad de mantener la confianza del público en el sistema de justicia. *Id.*

La ABA propone que, como norma general, "[a] judge may participate in electronic social networking, but as with

---

[26] Para una discusión y análisis de tales opiniones, véase John G. Browning, *supra*; Craig Estlinbaum*, Social Networking and Judicial Ethics*, 2 St. Mary's J. on Legal Malpractice & Ethics 2 (2012); Herbert B. Dixon, *The Black Hole Effect: When Internet Use and Judicial Ethics Collide*, 49 No. 4 Judges' J. 38 (2010).

[27] Disponible en: http://www.americanbar.org/dam/aba/administrative/professio nal_responsibility/formal_opinion_462.authcheckdam.pdf.

all social relationships and contacts, a judge must comply with relevant provisions of the Code of Judicial Conduct and avoid any conduct that would undermine the judge's independence, integrity, or impartiality, or create an appearance of impropriety". *Id.* en la pág. 1. Así, pues, la opinión formal de la ABA sobre el asunto que nos ocupa es que, al utilizar y participar de las redes sociales, los miembros de la judicatura deben comportarse conforme a los postulados éticos exigibles en su jurisdicción.[28]

Al igual que la ABA, los comités de ética judicial de varios estados de Estados Unidos han emitido opiniones consultivas en las que han evaluado los parámetros éticos que han de regir la participación de los miembros de la judicatura en las redes sociales.

Se perfilan dos tendencias; una más rigurosa en cuanto al uso de las redes sociales y otra más laxa. Ello no obstante, ambas coinciden en que cualquier expresión de un juez vertida a través de las redes sociales tiene que ser cónsona con las exigencias éticas que regulen la función judicial en la jurisdicción de la que se trate. Véase, en general, Craig Estlinbaum, *Social Networking and Judicial Ethics*, 2 St. Mary's J. on Legal Malpractice & Ethics 2 (2012). El Comité de Ética Judicial del estado de Nueva York emitió la Opinión 08-176 del 29 de enero de 2009, que

---

[28] A modo de ejemplo, la Opinión puntualiza que, al compartir comentarios, fotografías u otra información, el juez debe tener presente los requisitos del Canon 1.2 del Código Modelo de Conducta Judicial promulgado por la ABA (Código Modelo), que exige que sus actuaciones promuevan la confianza del público en la judicatura.

pautó las coordenadas de dicho enfoque permisivo. N.Y Advisory Comm. On Judicial Ethics, Op. 08-176 (2009).[29] En ésta, de forma similar a la Opinión Formal de la ABA, el Comité de Ética Judicial del estado de Nueva York concluye que los jueces pueden hacer uso de las redes sociales siempre y cuando cumplan con las Reglas de Conducta Judicial de Nueva York.[30]

La opinión emitida por el Comité de Nueva York recalca que no es inherentemente inapropiado que un miembro de la judicatura utilice una red social pues, después de todo, los jueces socializan y utilizan otras formas de tecnología, tales como celulares o páginas de internet. *Id.* en la pág. 1. La controversia se reduce, entonces, no a si el juez puede utilizar las redes sociales, sino a **cómo** las utiliza y la información que divulga a través de éstas.

Por otro lado, el Comité de Ética de la Judicatura de Kentucky, en la Opinión Formal JE-119 del 20 de enero de 2010, se hizo eco del análisis esbozado en la opinión de Nueva York. Ethics Comm. of the Ky. Judiciary, Formal Ethics Op. JE-119 (2010).[31] Concluyó que "a Kentucky judge

---

[29] Disponible en: http://www.courts.state.ny.us/ip/judicialethics/opinions/08-176.htm.
[30] Vale mencionar que el Comité de Ética Judicial de Nueva York apunta que, dado que las redes sociales cambian y se desarrollan constantemente, ninguna opinión puede predecir cómo estas afectarán las responsabilidades de los jueces. Recomienda, pues, que estos últimos se mantengan informados de las implicaciones éticas que los cambios tecnológicos puedan acarrear. *Id.* en las págs. 2-3.
[31] Disponible en: http://courts.ky.gov/commissionscommittees/JEC/JEC_Opinions/JE_119.pdf

or justice's participation in social networking sites is permissible, but that the judge or justice should be extremely cautious that such participation does not otherwise result in violations of the Code of Judicial Conduct." *Id.* en la pág. 5.

Por su parte, la Asociación de Jueces de California emitió una opinión, que fue posteriormente citada y acogida por los comités de ética de Maryland y Tennessee, en la que dispuso que la conducta del juez en las redes sociales no debe ser contrariar a las disposiciones éticas aplicables y explicó que, en este contexto, aplican las mismas reglas que gobiernan la socialización y comunicación personal, independientemente del medio que se trate. Cal. Judges Association Ethics Comm., Op. 66 (2010);[32] Md. Judicial Ethics Comm, Published Op. 2012-07 (2012);[33] Tenn. Judicial Ethics Advisory Comm., Op. 2010-06 (2010).[34] En esta opinión se asevera lo siguiente: "[i]t is the nature of the interaction that should govern the analysis, not the medium in which it takes place". Cal. Judges Association Ethics Comm., Op. 66, *supra* en la pág. 11.

De otro lado, otras jurisdicciones han adoptado posturas más restrictivas en cuanto al uso de las redes sociales. Así, el Comité Asesor de Ética Judicial de

---

[32] Disponible                                                     en: http://www.caljudges.org/docs/Ethics%20Opinions/Op%2066%20Final.pdf

[33] Disponible en: http://mdcourts. gov/ethics/pdfs/2012-07.pdf

[34] Disponible               en:               http: //www.tncourts.gov/sites/default/files/docs/advisory_opinion_12-01.pdf

Florida determinó que, aunque los miembros de la judicatura pueden utilizar las redes sociales, estos tienen que ser sumamente cautelosos y evitar, por ejemplo, tener como "amigos" en la red social *Facebook* a abogados que puedan comparecer en casos ante su consideración.[35] Fla. Judicial Ethics Advisory Comm., Op. 2009-20 (2009).[36] Aun así, el Comité de Florida manifestó que los miembros de la judicatura pueden publicar comentarios y otro tipo de material en las redes sociales, siempre y cuando la publicación no violente el Código de Ética Judicial de

---

[35] El Comité de Ética Judicial de Florida ha emitido varias opiniones consultivas sobre el tema de la ética judicial y las redes sociales. Véase, Fla. Judicial Ethics Advisory Comm., Op. 2010-04 (2010), disponible en: http://www.jud6.org/legalcommunity/legalpractice/opinions/jeacopinions/2010/2010-04.html (determinando que el asistente de un juez puede añadir como amigos en *Facebook* a abogados); Fla. Judicial Ethics Advisory Comm., Op. 2010-06 (2010), disponible en: http://www.jud6.org/legalcommunity/legalpractice/opinions/jeacopinions/2010/2010-06.html (reiterando la Opinión 2009-20 respecto a que un juez no puede tener como amigo en *Facebook* a abogados que puedan comparecer ante él y añade que tal norma aplica inclusive si el juez hace una aclaración en su perfil sobre el hecho de que el concepto "amigo" en *Facebook* no significa amigo en el sentido tradicional de la palabra); Fla. Judicial Ethics Advisory Comm., Op. 2012-12 (2012), disponible en: http://www.jud6.org/legalcommunity/legalpractice/opinions/jeacopinions/2012/2012-12.html (analizando los parámetros de la ética judicial en el contexto de la red social *LinkedIn* y reitera, en tal escenario, la norma de la Opinión 2009-20 sobre la prohibición de añadir como amigo a abogados); Fla. Judicial Ethics Advisory Comm., Op. 2013-14 (2013), disponible en: http://www.jud6.org/legalcommunity/legalpractice/opinions/jeacopinions/2013/2013-14.html (evaluando los parámetros de la ética judicial en el contexto de la red social *Twitter*).
[36] Disponible en: http://www.jud6.org/legalcommunity/legalpractice/opinions/jeacopinions/2009/2009-20.html

dicho estado.[37] Otras jurisdicciones, tales como Oklahoma y Massachusetts, han adoptado el estándar de análisis restrictivo propuesto por Florida. *In re Judicial Ethics Op. 2011-3*, 261 P.3d 1185, 1186 (2011); Mass. Comm. On Judicial Ethics, Op. No. 2011-6(2011).[38]

Como hemos visto, los comités de ética judicial de todas las jurisdicciones estudiadas coinciden en varios asuntos. En primer lugar, las opiniones reseñadas invitan a los jueces a reconocer el alcance y carácter público de la información que colocan en una red social.[39] En segundo

---

[37] Nótese que las restricciones adicionales impuestas por el estado de Florida giran en torno a asuntos inherentes de la interacción en las redes sociales, tales como la posibilidad de tener como "amigo" en *Facebook* a un abogado. Así, según las demás opiniones consultivas de otras jurisdicciones, a juicio de la Comisión de Ética Judicial de Florida, un juez puede hacer uso de las redes sociales siempre y cuando actúe conforme a las normas éticas aplicables.

[38] Disponible en: http://www.mass.gov/courts/case-legal-res/ethicsopinions/ judicial-ethics-opinions/cje-opin-2011-6.html

[39] Véase por ejemplo, ABA Comm. On Ethics & Prof'l Responsibility, *supra* ("Judges must assume that comments posted to an [electronic social media] site will not remain within the circle of the judge's connections. . . .[M]essages, videos, or photographs posted to [electronic social media] may be disseminated to thousands of people without the consent or knowledge of the original poster. Such data have long, perhaps permanent, digital lives such that statements may be recovered, circulated or printed years after being sent."); N.Y Advisory Comm. On Judicial Ethics, *supra*, en la pág. 2 ("A judge should . . . recognize the public nature of anything he/she places on a social network page and tailor any postings accordingly."); Ethics Comm. Of the Ky. Judiciary, Formal Ethics, *supra*, en la pág. 5 ("While social networking sites may have an aura of private, one-on-one conversation, they are much more public than offline conversations, and statements once made in that medium may never go away."); Cal. Judges Association Ethics Comm., *supra* (By their very nature social networking sites are the antithesis of maintaining privacy. It is frightening how much someone can learn about

lugar, estas advierten que el juez, distinto de las demás personas, está sujeto a ciertas normas éticas y restricciones al utilizar y participar de las redes sociales.

Finalmente, las opiniones emitidas en todas las jurisdicciones estudiadas coinciden en que, si bien la mera participación de un juez en una red social no constituye conducta que esté reñida con los postulados éticos, los miembros de la judicatura que las utilicen deben ceñirse estrictamente a los postulados y principios del código de ética judicial aplicable.[40] "For the most part, these

---

another person from a few Internet searches. The judge's site may be set with the most restrictive privacy settings, but his/her friends' sites might not. Data imbedded in photos posted on the Internet may be accessible to others. Used in connection with cellular phones, some sites let other participants know a participant's physical location at any given time.").

[40] Cabe señalar también que, tanto en el resto de América como en Europa, se ha planteado el problema ético que supone la participación de jueces en las redes sociales. La solución provista por los órganos rectores correspondientes no ha sido unívoca, pero sigue patrones similares a los antes descritos. En el contexto de la Comisión Iberoamericana de Ética Judicial, el 9 de diciembre de 2015 se adoptó un dictamen que pretende definir "algunos parámetros de aplicación general, para el uso ético de las redes sociales por parte de las personas que ejercen la judicatura y su personal de apoyo". Comisión Iberoamericana de Ética Judicial, *Uso de redes sociales*, 1, http://www.ejrlb.net/documentouso_redessociales_ciej (última visita, 3 de septiembre de 2016). Véase, además, Monica Claes, Maartje de Visser, *Are You Networked Yet? On Dialogues in European Judicial Networks*, Utrecht Law Review (2012), disponible en https://www.utrechtlawreview.org/articles/abstract/10.18352/ulr.197/ (última visita, 3 de septiembre de 2016); Conseil supérieur de la magistrature, (Francia), Décision d el Conseil de Discipline des Magistrats du Siége M. X., S213CE, 30 de abril de 2014; Judiciary of England and Wales, *Guide to Judicial Conduct,*27, https://www.judiciary.gov.uk/wp-

opinions recognize that judges can navigate social media ethically by simply applying well-established principles to the unfamiliar context of social media." B. P. Cooper, *USA: Saving Face-Ethical Considerations for American Judges Using Facebook,* Legal Ethics Volume 17, Issue 1, 148 (2014). Por tanto, al determinar si la participación de un juez se ajusta a los parámetros éticos aplicables, las jurisdicciones de Estados Unidos han hecho énfasis en la naturaleza de la conducta y no así en el medio a través del cual esta se manifiesta.[41]

---

content/uploads/JCO/Documents/Guidance/judicial_conduct_201 3.pdf (última visita, 3 de septiembre de 2016); Luis. M. Bunge Campos, *Jueces y redes sociales. Perspectiva desde la ética judicial*, https://www.poder-judicial.go.cr/eticayvalores/images/ConsejoNotables/Cuadern os/cuaderno07.pdf (última visita, 3 de septiembre de 2016).

[41] De otra parte, hay que destacar que varias decisiones de tribunales apelativos de jurisdicciones estatales de Estados Unidos discuten detalladamente las limitaciones a la participación de los miembros de la judicatura en las redes sociales.

En *In re Hon. Michelle Slaughter*, __ S.W.3d __ (Tex.Spec.Ct.Rev., 2015), 2015 WL 7738447 (caso no reportado), una comisión especial designada por el Tribunal Supremo de Texas evaluó la conducta de una jueza que publicó en la red social *Facebook* un comentario relacionado a un caso ante su consideración.[41] Aunque finalmente determinó que la conducta de la jueza no fue antiética, la comisión especial expresó que "our analysis of the allegations of misconduct alleged against the Respondent should not change simply because the communication occurred online rather than offline. Our analysis, therefore, should focus on *the substance of the comments* rather than the vehicle by which they were disseminated." *Id.*, en la pág.4.

Asimismo, en Carolina del Norte, un juez fue objeto de una reprimenda tras leer y publicar comentarios relacionados a un caso ante su consideración en la página de *Facebook* de la abogada de una de las partes, a quien éste tenía como "amiga" en dicha red social. Judicial Standards Comm'n of the State of N.C., Inquiry No. 08-234 (2009), disponible en: http://www.aoc.state.nc.us/www/public/coa/jsc/publicreprima nds/jsc08-234.pdf. La Comisión de Ética de Carolina del

**IV**

Examinadas las pautas éticas pertinentes, procede evaluar la conducta del Juez Colón Colón en función de éstas.

**A**

Como cuestión de umbral, es preciso aclarar que, en este caso, el hecho de que las expresiones emitidas por el Juez Colón Colón hayan sido publicadas por éste en la red social *Facebook* es irrelevante. Tal y como señalamos en la discusión que antecede, es el contenido de las expresiones emitidas por el Juez Colón Colón lo que está en controversia, no el medio a través del cual éstas se emitieron. Además, y más importante, las expresiones y comunicaciones hechas a través de las redes sociales tienen el mismo impacto y las mismas implicaciones que aquéllas hechas utilizando los medios tradicionales de comunicación. Si una expresión es inapropiada en el contexto de una actividad social tradicional, lo será igual si está dicha en el ciberespacio. **Es el mensaje y no**

---

Norte concluyó que lo anterior constituía una comunicación *ex parte* vedada por los cánones de ética judicial. Nótese que:

> the fact that improper *ex parte* communications occurred, *not the fact that the judge and attorney were Facebook friends or that the ex parte communications occurred in the virtual world, served as the basis for the sanction.* The *ex parte* communication would have been just as improper had it occurred over the telephone or via face-to-face communication. Craig Estlinbaum, *supra*, en la pág. 14 (*énfasis suplido*).

Nuevamente, el análisis de los foros judiciales que han tenido ante sí controversias análogas a ésta han hecho énfasis en la conducta del miembro de la judicatura, independientemente del medio en el cual esta se produjo.

**el vehículo lo que infringe los principios y valores deontológicos.**

De otra parte, no se debe perder de vista que, aun cuando los Cánones de Ética Judicial nada disponen sobre el uso de redes sociales, éstos "son de carácter general" y "[s]u contenido y alcance preciso serán delimitados por los distintos escenarios en los que se desempeñen las juezas y los jueces". 4 L.P.R.A. Ap. IV-B, Preámbulo. Por consiguiente, puesto que, en este caso, la conducta bajo examen no está relacionada a mecanismos inherentes a la plataforma virtual de la red social *Facebook*, los argumentos del querellado en torno a que los Cánones de Ética Judicial nada disponen sobre el uso de redes sociales son inmeritorios.

Asimismo, carece de mérito el planteamiento de que al querellado nunca se le ofrecieron talleres o adiestramientos sobre el uso de las redes sociales. Esto no lo exime de forma alguna de responsabilidad. Todo juez debe saber que mofarse, burlarse o expresarse con sorna públicamente sobre aquéllos que acuden a su sala es inaceptable, reprensible y repudiable.

En cualquier caso, y en atención a los postulados éticos discutidos, es obligación del Juez familiarizarse previamente con el medio a través del cual decide comunicarse y, además, velar por la corrección y circunspección de las expresiones que emite. Ese 'saber

comportarse' constituye un elemento imprescindible de la brújula moral interna de quien viste la toga.

Después de todo, los jueces están obligados a estudiar y aplicar rigurosamente los Cánones de Ética Judicial "a sus realidades particulares", entre éstas, los nuevos medios de comunicación virtual como la red social *Facebook*.

En conclusión, lo esencial no es el medio a través del cual se emitan las expresiones objeto de examen, sino el contenido de éstas a la luz de las pautas éticas aplicables.

## B

Dicho lo anterior, es innegable que en este caso el Juez Colón Colón incurrió en conducta lesiva de los cánones imputados y, al así actuar, laceró la dignidad inherente a la posición que ocupa. Recordemos que, en su página de *Facebook*, éste: se burló de una persona cuyo marido había sido despedido del empleo; se mofó de una madre porque no se expresó correctamente sobre la condición mental de su hijo; criticó cómo una mujer había cumplimentado el formulario de una orden de protección, y se vanaglorió de cómo ridiculizó en sala a una persona la cual expresó que "no pudo compadecer" al tribunal. Además, publicó extractos de dos (2) documentos judiciales para, nuevamente, hacer quedar como un hazmerreir a personas, evidentemente, de escasa educación.

En primer lugar, estas actuaciones del Juez Colón Colón contravienen el deber general que consagra el canon 2 de ética judicial por poner en entredicho la confianza depositada por la ciudadanía en la judicatura. Así, le faltó al deber de ejemplificar con sus actuaciones -públicas y privadas- la independencia judicial, concepto central y del cual dimana la legitimidad que informa precisamente la función judicial. Esto, por ejemplo, en la medida en que se mofó de personas que comparecieron ante sí mientras se desempeñaba como Juez.

De otra parte, en lo que respecta a los cánones 8 y 19, que, como vimos, están íntimamente relacionados, el Juez Colón Colón le faltó al deber de prudencia, imparcialidad y circunspección que éstos imponen. Ello, al comentar públicamente, por ejemplo, el contenido de una orden de protección y una querella que tuvo ante su consideración. Añádase a lo anterior los reiterados comentarios que denotan un tono burlón que lacera flagrantemente los preceptos éticos aludidos.

Humillar y escarnecer públicamente al ciudadano que acude a un juzgado en búsqueda de justicia constituye, sin más, una burla a la Justicia misma. Su conducta abre la puerta a cuestionar la imparcialidad del tribunal respecto a ese ciudadano. Asimismo, dicha conducta apunta a un grado de intolerancia inaceptable para con ciudadanos de escasos recursos o cuando menos, de aparente escasa educación. Esta displicencia hacia el prójimo, basada en

una evidente actitud ilusoria de superioridad moral e intelectual, inhabilita al Juez Colón Colón a vestir la toga. Son precisamente los más débiles, los que no conocen los procesos en una sala de un tribunal, los que no se pueden expresar con facilidad –bien porque no tienen grados universitarios o porque se sienten intimidados por el proceso mismo– los que necesitan de mayor protección, atención y empatía del juez y del sistema judicial. A éstos, a los que nos debemos y juramos proteger, son a los que el Juez Colón Colón ha despreciado con su comportamiento. Con su actitud, el Juez Colón Colón revela que no tiene ni la madurez ni el temperamento necesario para desempeñarse como juez.

Téngase en cuenta, también, que en al menos dos ocasiones los comentarios en cuestión estuvieron acompañados por fotografías de documentos judiciales. Se revela inapropiado, a nuestro juicio, que un juez disemine, fuera de los cauces judiciales, información, hechos o datos de los que conozca en el ejercicio de su función, más aún cuando se hace para criticar a las partes en un proceso judicial.

Por último, para sopesar el efecto de estas actuaciones en su justa perspectiva es importante considerar el cargo que ostenta el Juez Colón Colón, a saber, uno de juez municipal. Nótese que la figura del juez municipal es esencial en el funcionamiento del sistema de justicia. El juez es la herramienta a través del cual el

sistema judicial actúa y se deja sentir. En innumerables instancias el juez municipal será el único rostro que el ciudadano conocerá.

Las salas municipales atienden una cantidad considerable del público que acude a nuestros tribunales desde horas de la mañana, hasta altas horas de la madrugada. Al así hacerlo, conforme a la competencia que en éstos delega la *Ley de la judicatura de Puerto Rico de 2003*, 4 LPRA secs. 24-25, los jueces municipales atienden un sinnúmero de controversias que los colocan en una proximidad particular para con el ciudadano.[42] Ello exige de ese juez, como poco, sensibilidad para con ese ciudadano que, en altas horas de la noche, busca resguardo. Así pues, para atender cabalmente las dinámicas que se suscitan en sus salas, los jueces municipales tienen que cumplir con la más estricta observancia de los Cánones de Ética Judicial. Ello no puede ser de otra forma, pues en este contexto el resultado de sus actuaciones es aún más palpable y, por consiguiente, sus efectos negativos pueden tener aún mayor impacto en la ciudadanía.

---

[42] A manera de ejemplo, recordemos que los jueces municipales tiene la facultad, en el contexto del Derecho Civil, de: ordenar estados provisionales de derecho, conceder órdenes de protección, autorizar peticiones de ingreso involuntario a instituciones de salud mental y revisar multas administrativas. Por otro lado, con relación al Derecho Penal, en las salas municipales se comienza el procedimiento penal con las determinaciones de causa probable para arresto o citación y la fijación de fianza. Por último, los jueces municipales, incluso, podría servir de árbitros o mediadores tras ser debidamente certificados por este Tribunal. Véase 4 LPRA sec. 25d.

Así las cosas, la conducta del Juez Colón Colón, en conjunto, se apartó del estándar que establece el canon 23, en lo que se refiere a las actividades extrajudiciales de los miembros de la judicatura. Su proceder inopinado, sus comentarios insensibles y reiterados laceraron, sin lugar a dudas, la imagen de pulcritud, sensibilidad, rectitud, e integridad que ha de regir las actuaciones de un Juez, tanto en su vida profesional como en su vida privada. Reitero, con sus acciones comprometió su propia imparcialidad.

No debemos olvidar que el juez ocupa un sitial privilegiado, desde el cual realiza una de las labores de mayor trascendencia para nuestra vida en sociedad: impartir justicia. En cierta medida, además, su figura encarna los valores fundamentales que informan esa encomienda, a saber: la imparcialidad, la ecuanimidad, la serenidad, el trato justo y la racionalidad misma del Derecho. Así, el juez emerge como afanoso servidor de la Justicia y, a la vez, como símbolo de la miríada de valores que ésta supone.

Precisamente en función del sinnúmero de consideraciones que representan la función judicial, al juez se le exige un estándar de conducta más riguroso que a otros. Ello, puesto que su conducta trasciende su propia individualidad y constituye un reflejo de la integridad del sistema judicial en el que sirve. Debemos, pues, ser celosos guardianes de la rectitud, la decencia,

la probidad y la dignidad de los miembros de la judicatura, porque sólo de esa forma protegemos la confianza ciudadana en una de sus más preciadas instituciones: la Rama Judicial.

Por tanto, en consideración de lo anterior, estimo que es innegable que el Juez Colón Colón violó los cánones de ética judicial imputados.

## V

Concluyo citando al Magistrado David Ordóñez Solís, quien recién publicó un artículo sobre el tema que nos ocupa:

> En suma, la participación del juez en una red social o en un blog debe estar presidia por una exquisita cortesía y por una serena prudencia, debiendo el juez ser consciente de que su comportamiento o incluso sus críticas se atribuyen por los ciudadanos no solo al juez como un ciudadano más sino a la institución jurídica, al poder del Estado del que forma parte. David Ordóñez Solís, *¡¡¡Pero bueno, los Jueces también están en las redes sociales!!!*, Diario La Ley, no. 8762, 16 de mayo de 2016, pág. 12.

Considero que las actuaciones del Juez Colón Colón se apartan de los ideales más excelsos que aspiramos para nuestra judicatura. Su conducta es reiterada, revela un preocupante desdeño para con los menos instruidos, y además su comportamiento es insensible hacia los ciudadanos que acuden a su sala y atenta contra la dignidad de estos. Su actitud prepotente se hace evidente cuando observamos que no surge del expediente que el Juez Colón Colón haya reconocido, en momento alguno, el

carácter deplorable de su conducta. **¡Ello es verdaderamente sorprendente!** Con su actitud el Juez Colón Colón pone de manifiesto que no tiene ni la madurez ni el temperamento necesario para desempeñar el cargo de juez. ¿Cómo justificar su permanencia en la Rama Judicial? La respuesta a esta pregunta, francamente me elude.

Por último, no podemos concluir sin antes hacernos una pregunta adicional. ¿Cómo explicar que la sanción impuesta en este caso, tres meses de suspensión de empleo y sueldo, sea idéntica a la que hace pocos días se le impuso al Juez Carlos Candelaria Rosa? Véase *In re Carlos Candelaria Rosa, Per Curiam* de 1 de marzo de 2017. Al así proceder, la mayoría concluye -en fin- que ofender a un juez de mayor jerarquía en una ocasión lleva la misma sanción que menospreciar y humillar reiteradamente a los ciudadanos más vulnerables, de trasfondos socio-económicos humildes y aparente escasa escolaridad.

Según reseñamos, la conducta en el caso ante nuestra consideración es reiterada, va dirigida a menospreciar a aquellos ciudadanos que acuden a nuestros tribunales día tras día a buscar una mano amiga, y el juez querellado en ningún momento mostró el más mínimo arrepentimiento por su conducta. Por el contrario, *In re Candelaria Rosa* trata de un incidente aislado, en el cual "el ofendido" es un ex compañero de la judicatura, y el juez querellado expresó su arrepentimiento, reconoció su conducta y pidió disculpas.

No hay respuesta razonable a la pregunta formulada. Lo que sí se pone de manifiesto es que el análisis de la ponderación de la pena que se recoge en la Opinión mayoritaria, es endeble, quebradizo e inconsistente. Por último, adviértase que este caso no sólo se dilucidó coetáneamente a *In re Candelaria Rosa*, sino que el proceso deliberativo comenzó mucho antes.

En consideración a todo lo anterior, concluyo que el Juez Colón Colón debe ser destituido del cargo que ocupa en calidad de Juez Municipal.[43] Habida cuenta de que la

_____

[43] Una mayoría de este Tribunal aprovechó la presente coyuntura para "intentar" realizar un análisis ponderado de nuestra jurisprudencia en procedimientos disciplinarios contra Jueces. Ello, con tal de aplicar de manera uniforme el principio de proporcionalidad. Véase *Pueblo v. Quiles Negrón y otros*, 193 D.P.R. ___ (2015) (Opinión Disidente, Rodríguez Rodríguez). No obstante, estimo que en este caso dicho proceder supone un empleo acomodaticio del referido principio. Los hechos que subyacen la mayoría de las determinaciones de destitución reseñadas en la opinión mayoritaria, en sí mismos, ejemplifican conducta patentemente reprochable. Ello, incluso, si evaluamos dicha conducta fuera del contexto de la función judicial. Ahora bien, estimo que, aún guiados por el principio de proporcionalidad, no debemos permitir que hechos como los reseñados causen una impresión indebida que nuble nuestra tarea adjudicativa.

Recuérdese, además, que recientemente indicamos que "[l]a destitución de un juez tiene cabida en nuestro ordenamiento cuando éste exhibe un *patrón de conducta impropia e incompatible con su cargo, máxime cuando se incurre en el uso de lenguaje y expresiones impropias y soeces o conducta agresiva, beligerante y abusiva*". *In re Quiñones Artau*, 2015 T.S.P.R. 84, en la pág. 18. ¿Ayer sí, ahora no? Véase, además, *In re Martínez González*, 151 D.P.R. 519, 531 (1998); *In re Nevárez Zavala*, 123 D.P.R. 511, 525 (1989). En este caso no nos encontramos ante uno o dos incidentes aislados. Todo lo contrario, es evidente el patrón de conducta que desplegó el Juez Colón Colón por espacio de más de un año.

Aunque el principio de proporcionalidad debe servirnos como guía al atender procedimientos disciplinarios, como bien reconoce una mayoría de este Tribunal, su aplicación

mayoría del Tribunal estima que la sanción apropiada es una suspensión de tres meses, no tengo otra alternativa que expresar mi firme desacuerdo y decepción.


                            Anabelle Rodríguez Rodríguez
                                   Juez Asociada

---

no "representa un obstáculo a nuestra autoridad disciplinaria". Véase *Opinión Mayoritaria*, págs. 27-28. Por ello, me reafirmo en la necesidad de que este Foro, conjunto a la Rama Judicial, continúe su encomienda de atender con rigor y firmeza aquella conducta antiética desplegada por los miembros de la judicatura. Véase *In re: Quiñones Capacetti*, 2016 T.S.P.R. 6, 195 D.P.R. ___ (Opinión Disidente, Rodríguez Rodríguez).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In *re*:

Hon. Eric Colón Colón
Juez Municipal

AD-2014-005

Tribunal de Primera
Instancia
Sala Municipal de Coamo

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 31 de marzo de 2017.

La toga nos recuerda la carrera estudiada, lo elevado de nuestro ministerio en la sociedad, la confianza que en nosotros se ha puesto, la índole científica y artística del torneo en que vamos a entrar, la curiosidad, más o menos admirativa, que el público nos rinde… [L]a toga es un llamamiento al deber, a la verdad y a la belleza. Con la toga puesta […] aparece la necesidad de ser más justo, más sabio y más elocuente que los que nos rodean; el temor a errar o desmerecer; el respeto a los intereses que llevamos entre manos… [E]l clarividente sentido popular, al contemplar a un hombre [o una mujer] vestido de un modo tan severo, con un traje que consagraron los siglos, y que sólo aparecer para menesteres trascendentales de la vida, discurre con acertado simplismo: "Ese hombre [o mujer] debe ser bueno[a] y

sabio[a]". Y sin duda tenemos la obligación de serlo y de justificar la intuición de los humildes. ¡Pobres de nosotros si no lo entendemos así y no acertamos a comprender toda la austeridad moral, todo el elevado lirismo que la toga significa imponer![44]

En el presente caso tenemos la delicada tarea de juzgar la conducta de un compañero juez del Tribunal de Primera Instancia. Al descargar esa responsabilidad, la cual incide sobre la confianza de la ciudadanía en la Rama Judicial, lo hacemos con el rigor que el País espera y merece, de quienes, en última instancia, somos los llamados a regular la conducta de los jueces y las juezas que componen el Poder Judicial en Puerto Rico. Lo hacemos, también, teniendo presente que aquel que le falla a la confianza de un Pueblo, y en su día queda demostrado, no debe tener el privilegio de vestir una toga.

Establecido lo anterior, procedemos a exponer los fundamentos que nos mueven a disentir del lamentable proceder de una mayoría de este Tribunal en el día de hoy.

**Ello, no sin antes, reiterar la enorme preocupación, manifestada desde el día que asumí el cargo como Juez Asociado de este Tribunal, con la falta de uniformidad y proporcionalidad que, lamentablemente, ha permeado por años en este Alto Foro al momento de imponer sanciones**

---

[44] A. Ossorio y Gallardo, *El Alma de la Toga*, 1ra ed., San Bernandino CA, [s. Ed.], 2016, págs.159-160.

**disciplinarias a jueces y juezas, así como a abogadas y abogados. Para una muestra de ello no hay que ir muy lejos, basta con analizar y comparar las últimas tres decisiones de este Tribunal en procedimientos disciplinarios contra jueces o juezas, a saber: *In re Vissepó Vazquez,* 2016 TSPR 211, 196 DPR ____ (2016); *In re Candelaria Rosa,* Op. de 1 de marzo de 2017, y el caso que nos ocupa. Insistimos en que es momento de estudiar y repensar este asunto, en aras de cumplir con la facultad constitucional e inherente que tiene este Tribunal de reglamentar la profesión. Estoy seguro que los jueces y juezas que componen la Rama Judicial en Puerto Rico, nuestros abogados y abogadas, así como la comunidad en general, lo agradecerán. Veamos.**

I.

Del cuadro fáctico que expondremos a continuación cabe cuestionarnos si el Juez Municipal del Tribunal de Primera Instancia, Sala Municipal de Coamo, Eric Colón Colón (en adelante "Colón Colón") contravino los Cánones 2, 8, 19 y 23 de Ética Judicial, 4 L.P.R.A. Ap. IV-B. De responder en la afirmativa, entonces resta determinar el tipo de sanción a aplicarse.

Como bien se recoge en la Opinión del Tribunal, así como en la Opinión Disidente de la Juez Asociada señora Rodríguez Rodríguez, la controversia ante nuestra consideración surge a raíz de múltiples expresiones -- desacertadas, destempladas, insensibles e indecorosas -- realizadas por Colón Colón en la red social *Facebook.*

Concretamente, Colón Colón publicó, en su página personal de *Facebook,* lo siguiente[45]:

### A. <u>Comentarios sobre asuntos del Tribunal</u>:

**Comentario del 1 de septiembre de 2011:** "Una señora me dice: 'No he podido pagar la renta porque a mi marido le dieron lay oss'. Y yo en mi mente: Ay chus!".

**Comentario del 6 de septiembre de 2011:** "Que bonita esta querella que me han traido [sic]!". Junto al comentario, el Juez Colón Colón publicó dos fotografías que parecen ser porciones de una querella manuscrita.

**Comentario del 19 de septiembre de 2011:** "Esta señora me ha dicho hoy que su hijo padece de esquizofrenia, pero anenoide. Diiitoooo...".

**Comentario del 8 de octubre de 2011:** "Sigo acordándome de cosas: Hace algún tiempo, un señor se excusó porque no pudo compadecer al tribunal. Yo le contesté que no había ningún problema que el tribunal estaba de lo más bien, pero que gracias por preocuparse. Loll".

**Comentario de 12 de enero de 2012:** "Así [sic] mismo como lo lee: esta persona presentó una querella porque le vendieron un carro sin batería y sin valvete". En otro comentario relacionado a la misma querella indicó: "A lo mejor tenía la vonga…".

**Comentario sin fecha de publicación:** "Entonces, la peticionaria de la orden de protección, al llenar el encasillado donde se describe el tipo de relación que sostenía con el peticionado, esto fue lo que escribió". Junto al comentario aparece una fotografía que parece ser un formulario de orden de protección de la OAT. En el encasillado del formulario donde se indicaba "otra", la persona escribió "me endrogue [sic]".

---

[45] Ello se desprende de la investigación realizada por la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales.

Como si ello fuera poco, Colón Colón también publicó en las redes sociales comentarios y fotos alusivas a su frecuente consumo de bebidas alcohólicas:

B. <u>Comentarios alusivos a su frecuente consumo de alcohol:</u>

**Comentario de 21 de agosto de 2011:** "Gente, dense prisa, que dentro de una hora el gobernador anunciará si decreta la ley seca. A correr se ha dichooooo!!!".

**Comentario de 21 de agosto de 2011:** "Bueno, creo que ya tengo todo lo que me hacía falta para Irene" junto a una fotografía que incluye dos botellas de whisky *Dewar's White Label.* Otra persona comentó "tremendo HONORABLE, la tormenta no la sentiraaaa [sic]. La azúcar [sic] hace daño [sic] al ron, y el listerine para q[ue] el martes no se le nota…la tormenta […]".

**Comentario de 6 de enero de 2012:** "Con el permiso de tod@s, voy a prepararme un trago".

**Fotografía de 15 de julio de 2012:** Aparece Colón Colón con un trago en la mano. Uno de los comentarios a dicha foto indica: "Me encanta parece que vas a beber y no a apagar la vela…eso sería taaan tu…"

**Comentario de 22 de agosto de 2012:** "Como de costumbre, tengo todo lo necesario para la tormenta". El querellado incluyó una fotografía de una botella de whisky *Dewar's White Label* y algunos comestible.

**Comentario de 13 de octubre de 2013:** "Bueno, yo estoy medio litro, perdón, medio listo para la tormenta…" e incluyó una foto de una botella de whisky *Dewar's White Label.*

No conforme con lo anterior, Colón Colón, además, publicó múltiples comentarios de burla a la prensa del País, así como fotos y los siguientes comentarios con connotación sexual:

C. <u>Comentarios con alta connotación sexual</u>:

**Comentario de 21 de junio de 2011:** El querellado publicó una foto de una perra con las patas posteriores abiertas y comentó "No, no está muerta. Es mi perra Blanki del tribunal y a veces duerme asi [sic]. Es toda una perra!"

**Comentario de 18 de enero de 2012:** "Y ese titular que escuché: 'Suiza derrama leche en quebrada de Puerto Nuevo'? Qué cosa más sugestiva!!!"

**Comentario de 31 de enero de 2012:** A una fotografía de varios perros que parecen estar copulando, Colón Colón comentó: "Mis adorados perros del tribunal, jugando… Btw, la blanca y la negra son perras…".

Así las cosas, a raíz de las aludidas expresiones y previo a los procedimientos de rigor, el 12 de diciembre de 2014, la Oficina de Administración de los Tribunales (en adelante, "OAT") presentó una Querella contra Colón Colón. Mediante la misma, se le imputaron los siguientes cargos:

**Primer Cargo:** El Querellado lesionó la imagen de la Rama Judicial y socavó la integridad, el respeto y la confianza que debe tener el pueblo en la Judicatura, deshonrando el cargo judicial, el colocar comentarios, anuncios y mensajes en su página de *Facebook* burlándose de ciudadanos y ciudadanas que habían comparecido ante él y haciendo referencia a asuntos que estaban o estuvieron ante su consideración, incluyendo o colocando en dicha página de *Facebook* copia de partes o porciones de documentos judiciales, además de mostrar imprudencia y falta de sensibilidad. Al así hacerlo, el Querellado infringió los Cánones 2,8,9 y 23 de Ética Judicial.

**Segundo Cargo:** El Querellado lesionó la imagen de la Rama Judicial y socavó la integridad, el respeto y la confianza que debe tener el pueblo en la Judicatura, al colocar comentarios, anuncios y mensajes en su página de *Facebook* relacionados o haciendo referencia a bebidas alcohólicas, críticas a la prensa y al modo de la redacción de noticias, burlas de la manera de expresarse de ciudadanos que habían comparecido ante él, alusión a animales en posiciones de copulación y referencias políticas.

**Tercer Cargo:** El Querellado no observó su deber de comportarse de acuerdo a las más altas normas de respeto, decoro, solemnidad y dignidad requeridas a los miembros de la Judicatura en su página de Facebook, violentando su deber y responsabilidad de exhibir un comportamiento ejemplar en todo momento, tanto en su vida profesional, como en su vida privada. De esa forma, infringió los Cánones 2, 8, 19 y 23 de Ética Judicial.

En síntesis, y luego de varios incidentes procesales no necesarios aquí pormenorizar, los cuales se recogen de manera íntegra en la Opinión del Tribunal, la Comisión de Disciplina Judicial concluyó que Colón Colón publicó comentarios y/o fotografías que por su naturaleza constituyen una violación a los Cánones 2, 8, 19 y 23 de Ética Judicial, *supra*. A raíz de ello, la referida Comisión recomendó la destitución del cargo de Juez Municipal como medida disciplinaria a imponerse al querellado. Lamentablemente, dicha recomendación no fue acogida por una mayoría de este Tribunal, la cual optó por imponer la laxa sanción de tres (3) meses de suspensión. No estamos de acuerdo.

Contrario a lo resuelto por una mayoría de este Tribunal, coincidimos con la Comisión de Disciplina Judicial, en cuanto a que la destitución de Colón Colón de su cargo de Juez Municipal es, el correcto curso de acción a seguir en el presente caso. Nos explicamos.

II.

Como es sabido, en virtud del Artículo V, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico, Const. ELA, LPRA, Tomo 1, este Tribunal posee autoridad exclusiva para atender los procedimientos

disciplinarios relacionados con los jueces y juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones. De conformidad con dicha autoridad, hace ya más de medio siglo, aprobamos -- por primera vez -- los Cánones de Ética Judicial, *supra*, e impusimos ciertos deberes mínimos que los jueces y las juezas deben cumplir con el propósito de promover la confianza de los ciudadanos en nuestro sistema judicial y para garantizar que su trabajo sea consecuente con los más altos estándares éticos. *In re Quiñones Artau,* 193 DPR 356 (2015) a la pág. *376; In re Sierra Enríquez*, 185 DPR 830, 850 (2012); *In re Claverol Siaca*, 175 DPR 177, 188 (2009). Allí también, se obligó a los jueces y a las juezas "*al compromiso y responsabilidad de imponerse restricciones a su conducta, tanto en la esfera de sus funciones judiciales como en otras actividades profesionales y personales*". Preámbulo de los Cánones de Ética Judicial, *supra; In re Acevedo Hernández*, 2015 TSPR 167, 194 DPR ____ (2015); *In re Berríos Jiménez*, 180 DPR 474 (2010); *In re Nevárez Zavala*, 123 DPR 511, 524 (1989).

En ese sentido, y en lo pertinente a la controversia que nos ocupa, el Canon 2 de los de Ética Judicial dispone que "*[l]as juezas y los jueces ejemplificarán la independencia judicial, tanto en sus aspectos individuales como institucionales*". 4 LPRA Ap. IV-B, C. 2. Al respecto, hemos reiterado que "*[e]l juez o la jueza debe ser imparcial, por ello debe despojarse de todo vínculo que pueda arrojar dudas sobre su capacidad para*

*adjudicar la controversia"*. *In re Acevedo Hernández*, *supra,* a la pág. 367; *In re Grau Acosta*, 172 DPR 159, 171 (2007); *In re Martínez González*, 151 DPR 519, 527 (2000).

Por su parte, el Canon 8 de Ética Judicial establece que:

> [p]ara el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosas y laboriosos, **prudentes, serenos e imparciales.** Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.
>
> La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. 4 L.P.R.A. Ap. IV-B, C. 8. (Énfasis nuestro).

Sabido es que dicho Canon 8 ha sido interpretado por este Tribunal de forma tal que proscribe que la figura de los jueces y juezas sea utilizada indebidamente dentro o fuera del tribunal. *In re Quiñones Artau*, *supra*; *In re Scherrer Caillet-Bois*, 162 DPR 842, 860 (2004); *In re Cruz Aponte*, 159 D.P.R. 170, 180 (2003).

De otra parte, cabe mencionar que el Canon 19 del aludido Código de Ética Judicial esboza la prohibición de que los jueces y juezas realicen declaraciones públicas sobre ciertos asuntos: *"Las juezas y los jueces no harán declaraciones públicas sobre asuntos que estén sometidos ante su consideración ni explicarán la razón de sus actuaciones"*. 4 LPRA Ap. IV-B, C. 19.

Por último, el Canon 23 del Código de Ética Judicial tiene el propósito de precisar cómo debe ser la conducta pública de las juezas y los jueces:

> Las juezas y los jueces **se comportarán públicamente** de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales, **no deshonren el cargo judicial** y no interfieran con el cabal desempeño de sus funciones judiciales. 4 L.P.R.A. Ap. IV-B, C. 23. (Énfasis nuestro).

Según hemos expresado, este Canon 23 *"requiere que el comportamiento de los jueces y las juezas en público no ponga en duda su capacidad para ejercer su función adjudicativa de forma imparcial"*. *In re Acevedo Hernández, supra*, a la pág. 12; *In re Quiñones Artau, supra,* a la pág. 383. *Véase* además, *In re Aprobación Cánones Ética Judicial* 2005, 164 DPR 403 (2005), citando a R.J. Torres Torres, *Cánones de Ética Judicial de Puerto Rico*, 9 Forum 7, 8 y 22 (1993).

Es decir, que el comportamiento tanto dentro como fuera del tribunal debe ser uno de respeto y en enaltecimiento del cargo judicial. *In re Aprobación Cánones Ética 2005, íd.*, a la pág. 445.

Cónsono con lo anterior, y con la autoridad constitucional de este Tribunal para disciplinar a los jueces y juezas, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24 *et seq.*, dispone en su Artículo 6.001 las medidas disciplinarias a las que éstos y éstas se exponen al incurrir en violaciones a los Cánones de Ética Profesional, entre otras. Entre dichas medidas se

encuentran la destitución del cargo, la suspensión de empleo y sueldo, y limitaciones al ejercicio de la abogacía. 24 LPRA sec. 25j.

De igual forma, y en aras de instrumentalizar lo antes dicho, se aprobaron las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, las cuales establecen el proceso de acción disciplinaria contra los jueces y juezas. En apretada síntesis, el referido proceso, tal y como sucedió en el caso de autos, inicia con la presentación de una queja juramentada ante la Oficina de Asuntos Legales de la OAT o a iniciativa del Juez o Jueza Presidenta, Juez o Jueza Asociada, o el Director o Directora de la OAT. Posteriormente, de ser necesario, se realiza una investigación e informe a ser evaluado por la Comisión de Disciplina Judicial, la cual determinará la existencia o ausencia de causa probable para presentar una querella. Acto seguido, se inicia el descubrimiento de prueba y se celebra una vista evidenciaria. Finalmente, luego de dicha vista, la Comisión debe emitir un informe con su recomendación. Una vez la misma advenga final, el caso queda sometido para su adjudicación por parte de este Tribunal. 4 LPRA Ap. XV-B, R. 8, 13, 21, y 30.

Es, precisamente, a la luz del marco jurídico antes expuesto que procedemos a atender las controversias ante nos.

Ahora bien, antes de disponer de tales controversias, -- y no empece a los hechos antes reseñados -- es menester señalar que nuestros ciudadanos

y ciudadanas pueden tener la certeza de que cuentan con una Rama Judicial compuesta por jueces y juezas verticales, íntegros y con independencia de criterio. Han sido pocos aquellos que -- como Colón Colón -- le han faltado a la confianza que el País ha depositado en ellos. Contra esos, hemos sido, y continuaremos siendo implacables. A esa responsabilidad no abdicaremos.

### III.

Aclarado lo anterior, como muy bien se recoge en la Opinión del Tribunal y según surge de la propia contestación a la querella presentada por Colón Colón, en el presente caso no existe controversia en cuanto a que éste, en efecto, publicó los aludidos comentarios y fotos en su página pública de *Facebook*. Así lo concluyó la Comisión de Disciplina Judicial en sus determinaciones de hechos, las cuales este Tribunal no alteró, ante la ausencia de parcialidad, prejuicio o error manifiesto. *Véase*, a modo de ejemplo, *In re Santiago Concepción*, 189 DPR 378, 409 (2013).

Tampoco albergamos duda de que dicha conducta, tal y como lo resolvió una mayoría de este Tribunal, en efecto constituye una crasa violación por parte de Colón Colón a lo dispuesto en los Cánones 2, 8, 19 y 23 del Código de Ética Judicial, *supra*. En este sentido, a grandes rasgos, coincidimos con lo resuelto por una mayoría del Tribunal.

Ahora bien, a pesar de reconocer que la conducta del querellado tuvo el efecto de *"socavar el respeto y la confianza de la ciudadanía en la Rama Judicial"* y de que *"es esa confianza la que nutre la independencia judicial*

*y a su vez legitima el andamiaje en el cual se edifica la función judicial propiamente"*[46], una mayoría de este Tribunal -- de forma atropellada y sin aparente justificación para ello -- opta por alejarse de la recomendación emitida por la Comisión de Disciplina Judicial y procede a sancionar a Colón Colón con tan solo una mera suspensión por un período de tres (3) meses. A juicio de la mayoría, y en lo que respecta particularmente a la sanción impuesta, no se podía proceder de otra forma, pues -- en esencia – entienden que se trata aquí de un asunto novel, a saber: *"las implicaciones éticas que podrían suscitarse como resultado del uso de un magistrado de las redes sociales, en particular, la red social Facebook".*[47] No compartimos dicha apreciación y es ahí, precisamente, donde nos vemos en la obligación de disentir. Dos son las razones principales que nos mueven a ello.

En primer lugar, el intento de la mayoría de este Tribunal de disfrazar las controversias ante nos como un asunto novel, para de ese modo pretender justificar su laxo proceder en contra de Colón Colón, no encuentra apoyo en la jurisprudencia citada. No olvidemos que el medio a través del cual Colón Colón publicó las expresiones objeto del presente proceso disciplinario resulta ser inmaterial. Como sabemos, bien pudo Colón Colón haberlas realizado en un periódico, en una revista, en un programa de televisión o en cualquier otro medio de comunicación, y el resultado sería el mismo. Y es que la

---

[46] *Véase*, Opinión del Tribunal, pág. 18.
[47] *Véase*, Opinión del Tribunal, pág. 1.

conducta bajo análisis no es el uso de una red social sin más, sino el acto de deliberadamente publicar expresiones impropias e indecorosas, algunas de ellas de burla hacia ciudadanos y ciudadanas quienes, en el intento de reivindicar sus derechos, depositaron su confianza en nuestro sistema judicial y acudieron a la sala presidida por Colón Colón. Así pues,  nuestra función no es pasar juicio sobre el foro en el cual se realiza determinada conducta, sino pasar juicio sobre la conducta en sí.

En segundo lugar, es menester señalar que la jurisprudencia citada por la mayoría, como fundamento para su proceder, dista mucho de lo ocurrido en el presente caso.

Un minucioso análisis de los casos citados en la Opinión  del Tribunal revela que la conducta desplegada por los jueces y las juezas que en aquellas ocasiones fueron censurados -- y no destituidos por este Tribunal-- no fue una conducta que, similar a la de autos, atentara, ofendiera o estuviese dirigida a las personas que día a día acuden a nuestros tribunales en busca de justicia. Se trataba allí, más bien, de conducta desplegada por nuestros jueces y juezas en contra de abogados(as) u otros funcionarios(as) del Tribunal, que tienen cierto conocimiento de la manera en que se manejan los procesos en los tribunales y de las normas que los gobiernan.

Tampoco la conducta juzgada en los casos que analiza el Tribunal fue difundida --como en el presente caso -- a través de una red social *(Facebook)*, dando pie a que infinito número de personas tuviesen acceso a ésta y

también participasen de la conducta desacertada, destemplada, insensible e indecorosa desplegada por Colón Colón. En ese sentido, el daño ocasionado por Colón Colón resulta contundente e irreversible.

V.

Establecido lo anterior, somos de la opinión de que estamos ante un caso que concretamente ejemplifica el escenario donde, sin temor a equivocarnos, debería proceder la destitución de un juez o jueza de su cargo. Con su conducta y a través de sus desacertadas, destempladas, insensibles e indecorosas expresiones, Colón Colón ha demostrado carecer de las cualidades que demuestren su idoneidad de carácter para ejercer el cargo de juez que ocupa. Al haber sido incapaz de prever las ramificaciones éticas que acarrearían sus publicaciones en la red social *Facebook*, como mínimo, Colón Colón ha demostrado carecer de sentido común, sensibilidad, empatía, respeto, sobriedad y dignidad que debe poseer toda aquella persona que tiene el privilegio de vestir una toga. Dicha conducta, por sí sola, merece que este Tribunal ordene la destitución inmediata de Colón Colón de su cargo de juez municipal. No olvidemos que **"*[la] toga no es por sí sola una calidad, y cuando no hay calidades verdaderas debajo de ella, se reduce a un disfraz irrisorio*"**. A. Ossorio y Gallardo, *El Alma de la Toga*, 1ra ed., San Bernandino CA, [s. Ed.], 2016, págs.159-160.

No empece a lo anterior, una mayoría de este Tribunal parece reservar la sanción de la destitución de

un juez o jueza de su cargo únicamente a conductas tipificadas como delito o constitutivas de un abuso desmedido del poder judicial. Por ejemplo, en la Opinión del Tribunal se citan varios casos en los que los jueces y las juezas querelladas fueron destituidos de su cargo por cometer asesinato en primer grado, consumir sustancias controladas, incurrir en conducta constitutiva de hostigamiento sexual, violencia doméstica y agresión, entre otras.[48] Por supuesto, coincido con que dichas conductas son tan reprochables que ameritan la destitución de un compañero juez o jueza.

Sin embargo, para quien suscribe, constituye también una grave ofensa a nuestra Institución el que, de forma desacertada, destemplada, insensible e indecorosa, se le falte el respeto o se hiera a los seres humanos que los jueces y las juezas estamos llamados a servir. Es decir, esos seres humanos que día a día acuden a nuestros tribunales con la confianza de que, sin importar el resultado al que se llegue, al momento de adjudicar el particular drama humano que enfrentan, serán tratados con el mayor respeto. Ello, independientemente de su raza, color, sexo, origen o condición social, ideas políticas o religiosas, orientación sexual o identidad de género y, en lo que respecta a este caso, de su nivel de escolaridad.

Al enfrentarnos a violaciones éticas como las que hoy atendemos, el tratadista Rodolfo Luis Vigo, en su obra *Ética y Responsabilidad Judicial*, 1ra ed., Santa Fe,

---

[48] *Véase*, Opinión en las págs. 24-26.

Ed. Rubinzal-Culzoni, 2007, pág.215, argumenta a favor de la destitución del cargo de juez, pues *"estamos en el campo de la responsabilidad política"* -- es decir, la responsabilidad que surge en virtud del poder constitucional otorgado por el Pueblo al poder judicial -- *"y no de una responsabilidad estrictamente penal y, en consecuencia, basta con que la sociedad política que ha otorgado esa autoridad […] esté convencida de que no puede conservarla […]"*.

Es, precisamente, por la naturaleza intrínseca del campo de la ética, que la actuación de Colón Colón no tenía que encontrarse tipificada como delito en nuestro Código Penal para que ameritase la destitución de su cargo. *"Basta la presencia de un funcionario que significativamente incumpla sus deberes, para que se habilite su remoción atendiendo al perjuicio real o eventual que ese mal desempeño produce sobre el bienestar de la comunidad, y ello al margen de que ese incumplimiento sea voluntario o involuntario, con o sin provecho propio"*. *Íd.*, pág.211.

Y es que la conducta de Colón Colón, reprochable por demás, constituye una violación a la esencia misma de nuestra labor como jueces y juezas y, por tanto, a los pilares de nuestra Institución. Institución que, a fin de cuentas, emana de la voluntad de los propios ciudadanos y ciudadanas cuya dignidad Colón Colón degradó sin piedad ni compasión.

En palabras del ex Juez Asociado de este Tribunal señor Negrón García, expresadas con una sutileza

particular en *In re: Berríos Jiménez*, 180 D.P.R. 474, 478 (2010), sostenemos que:

> *[e]l buen juez, pues evita toda conducta que mine la confianza pública en la neutralidad del Poder Judicial. Sabe que la suspicacia es el elemento corrosivo más dañino y difícil de subsanar de la estabilidad, convivencia y paz social. Descubre a tiempo que la metamorfosis del abogado al jurista se produce y se consuma no sólo con la opinión correcta en derecho o el discurso académico, sino engalanada en una ejemplar conducta de moral, neutralidad y dignidad judicial.*

En fin, basta emplear el sentido común para concluir que Colón Colón, al burlarse de ciudadanos y ciudadanas que acuden a los tribunales del País a vindicar sus derechos, y al publicar comentarios y fotografías sobre asuntos ante su consideración, deshonró y desprestigió el cargo judicial que ostenta. Como si ello fuera poco, lesionó la imagen de la Rama Judicial de la que forma parte y violó la confianza depositada en él. Tengamos presente que la confianza otorgada por el pueblo en el sistema de justicia requiere que los jueces y las juezas actúen correctamente y conforme a los más altos niveles de principios morales. *Véanse In re Quiñones Capacetti*, 2016 TSPR 97, 195 DPR ___ (2016); *In re Quiñones Artau*, *supra* a la pág. 376; *In re Hon. Maldonado Torres*, 152 DPR 858, 867 (2000).

Como bien se reconoce en la Opinión que hoy emite este Tribunal, los comentarios publicados en *Facebook* por Colón Colón resultan *"mofantes, impudentes, y carentes de sensibilidad"* y tuvieron el devastador efecto de *"ultrajar la independencia judicial que todo magistrado tiene el deber de ejemplificar tanto dentro como fuera*

*del estrado"*.[49] Sin duda alguna, las actuaciones de Colón Colón levantan serios cuestionamientos sobre su temperamento judicial, pues evidentemente carece de sentido común, respeto, tolerancia, compasión, amplitud de mente, tacto y paciencia. Como si ello fuera poco, muestra grave prejuicio contra uno de los sectores más vulnerables de nuestra sociedad. **La conducta de Colón Colón es muestra patente de su abstracción de la sociedad en que vive; defecto que lo torna incapaz para ejercer sus prerrogativas judiciales.**

Recordemos que de los jueces y las juezas *"se espera un dominio adicional sobre las reacciones normales humanas"*. *Pueblo v. Baiges Chapel*, 103 DPR 856, 863 (1975) (Op. concurrente). Resulta evidente que Colón Colón carece de ese "dominio", también denominado por Ossorio y Gallardo como "freno":

> *[…] [L]a toga, como todos los atributos profesionales, tiene, para el que la lleva, dos significados: freno e ilusión […] Es freno, porque cohíbe la libertad en lo que pudiera tener de licenciosa. La conversación innecesaria con gentes ruines, la palabra grosera, el gesto innoble, el impulso iracundo, la propensión a la violencia quedan encadenados, ya que no extinguidos, por imperio del traje talar. […] [L]a toga es uno de los pocos recordatorios de que constituimos clase y de que en los estrados no está sola nuestra personalidad, acaso indomable, sino también la dignidad colectiva de todos nuestros compañeros, depositadas en nuestras manos en aquel minuto. Ossorio y Gallardo, op. cit., págs.158-159.*

Esa es la toga que estamos llamados a proteger, esa es la toga que estamos llamados a vindicar.

V.

---

[49] *Véase*, Opinión págs. 18-19.

En fin, una mayoría de este Tribunal, amparándose en su amplio grado de discreción para sancionar a Colón Colón, escogió el camino fácil y fue laxo en su función evaluadora. Al imponer una sanción de tan solo tres (3) meses de suspensión, dicha mayoría ha decidido cargar por los próximos seis (6) años -- término aproximado en que vence su nombramiento como Juez Municipal -- con lo que Colón Colón representa, según hemos ya expresado, para la Rama Judicial.

La consciencia me impide avalar con mi voto tal proceder. La reiterada política institucional de cero tolerancia a toda conducta que pueda lacerar la confianza de la ciudadanía en el sistema de justicia justifica la destitución propuesta. Es momento de hacer valer dicha política. La más severa de las faltas merece la más severa sanción.

Como bien señala el tratadista y Juez, Hon. Sigfrido Steidel Figueroa, en su artículo "*Ética de los Jueces: Apuntes sobre su Objeto y Metodología*", *Revista Ethos*, Oficina de Ética Gubernamental de Puerto Rico, vol. VI, 2009, en las págs. 217-218[50]:

> [l]a legitimidad de las instituciones públicas supone, entre otras cosas, una dosis significativa de confianza de parte de la ciudadanía. Esa confianza no surge espontáneamente. Es resultado de la confluencia de varios factores, entre los cuales la idoneidad de quienes ejercen los cargos públicos es un elemento indispensable. […] [L]a aptitud profesional, si bien es un elemento importante, es una condición necesaria, pero no suficiente para considerar a una persona como idónea para ejercer un

---

[50]Disponible en: http://issuu.com/eticagubernamental/docs/ethos_vi/17. (última visita, 29 de agosto de 2016)

cargo. La confianza es también fruto de la idoneidad de carácter, entendida esta como el conjunto de cualidades personales, al margen de la preparación profesional, que tiene el funcionario y que afectan o pueden afectar el desempeño de su cargo.

Es pues, por todo lo anterior, que disentimos del lamentable proceder de una mayoría de este Tribunal. En consecuencia, ordenaríamos la destitución inmediata de Colón Colón de su cargo de Juez Municipal.


                                        Ángel Colón Pérez
                                          Juez Asociado